## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF TEXAS - HOUSTON DIVISION

| | | |
|---|---|---|
| **TRINIDAD CUTSHALL,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No: 4:25-cv-02899** |
| | ) | |
| **HARRIS COUNTY, TEXAS,** | ) | |
| **DEPUTY C. MARSHALL, Individually,** | ) | |
| **DEPUTY N. POIRIER,** | ) | |
| **Individually, DEPUTY R.W. HOLLEY,** | ) | |
| **Individually, LIEUTENANT D.R.** | ) | |
| **CALHOUN, Individually, DEPUTY** | ) | |
| **KENNETH SANDOR, Individually,** | ) | **VERIFIED COMPLAINT** |
| **DEPUTY NAHUEL FAIURA,** | ) | |
| **Individually, DEPUTY E. HERNANDEZ,** | ) | |
| **Individually, SERGEANT M.A.** | ) | |
| **CARRIZALES, Individually,** | ) | |
| **DEPUTY P. BATTON, Individually,** | ) | |
| **SERGEANT TODD KLOSTERMAN,** | ) | |
| **Individually, DEPUTY J. LUNA,** | ) | |
| **Individually, SERGEANT DONALD** | ) | |
| **DILLOW, Individually, & DEPUTY S.** | ) | |
| **COGBURN, Individually,** | ) | |
| | ) | |
| **Defendants.** | ) | **JURY DEMAND** |
| | ) | |
| | ) | |

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT,

 **COMES NOW TRINIDAD CUTSHALL**, (hereinafter "Plaintiff"), in the above-styled and numbered cause of action, and files this, his Original Complaint and Jury Demand, complaining of **HARRIS COUNTY TEXAS**, (hereinafter "Defendant Harris County") and **DEPUTY C. MARSHALL, Individually, DEPUTY N. POIRIER, Individually, DEPUTY R.W. HOLLEY, Individually, LIEUTENANT D.R. CALHOUN, Individually, DEPUTY**

**KENNETH SANDOR, Individually, DEPUTY NAHUEL FAIURA, Individually, DEPUTY E. HERNANDEZ, Individually, SERGEANT M.A. CARRIZALES, Individually, DEPUTY P. BATTON, Individually, SERGEANT TODD KLOSTERMAN, Individually, DEPUTY J. LUNA, Individually, SERGEANT DONALD DILLOW, Individually, & DEPUTY S. COGBURN, Individually** (hereinafter and collectively "Defendant Deputies"), (hereinafter and collectively "Defendants"), and in support hereof, would show unto this Honorable Court the following:

## I.    NATURE OF THE CASE

1.1    This is a tragic lawsuit based on the evil, wicked, and vile actions of the most populous county in Texas and its deputies, lieutenants, and sergeants.  American history is full of dark times that have resulted in lessons learned.   However, oftentimes, history unfortunately repeats itself.  This case is the classic paradigm of police brutality and excessive force of the most abysmal, deplorable, and shameful nature.  Individuals in law enforcement enter the field in order to serve and protect, not bully, mutilate, and almost kill innocent citizens.

1.2    As a result of flawed policies, customs, training, and supervision, Plaintiff's constitutional protections were ruthlessly violated in a myriad of different forms or fashions. Plaintiff was almost killed as a result of Defendants' egregious conduct.  Plaintiff was completely sober and was suffering from a medical emergency.   Instead of proffering medical aid and attention, law enforcement shot Plaintiff with rubber bullets, deployed tear gas, unleashed vicious German Shepherds, and punched Plaintiff in the head multiple times, nearly killing Plaintiff.   To date, Plaintiff is continuing to endure medical injuries, mental anguish, and pain and suffering and is afraid to even leave his home.  This lawsuit will be a landmark case that

seeks to shed light on the tragic fact that even in this day and age, police brutality is more pervasive than ever.  As such, Plaintiff prays to this Honorable Court for relief at law and in equity.



*This is a photo of Plaintiff after being beaten, shot with rubber bullets, ripped to shreds by German Shepherds, succumbing to tear gas, and being punched repeatedly by law enforcement in the head and face until the point of unconsciousness.*

## II.    THE PARTIES

2.1    Plaintiff is a Louisiana resident.   Plaintiff currently resides and is domiciled in Delhi, Richland Parish, Louisiana.   Plaintiff resided and was domiciled in Delhi, Richland Parish, Louisiana, at the time these causes of action accrued.

2.2    Defendant Harris County is a local governmental entity existing within the U.S. Southern District of Texas and may be served with process by serving The Honorable Lina Hidalgo at the Harris County Commissioners Court, located at **1001 Preston Street, Suite 911, Houston, TX 77002**, or wherever she may be found.

2.3    Defendant Deputies are individuals with the Harris County Sheriff's Office, who at all times relevant to this suit, were acting within the course and scope of their employment with the Harris County Sheriff's Office.   Defendant Deputies are sued in their individual capacities.   Defendant Deputies may be served with process at their place of business, **1200 Baker Street, Houston, Texas, 77002**, or wherever they may be found.

## III.    MISNOMER/ALTER EGO

3.1    In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer," and/or such parties are/were "alter egos" of parties named herein.  Alternatively, Plaintiff contends that any "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## IV.    JURISDICTION AND VENUE

4.1    This Honorable Court has federal question jurisdiction over the lawsuit under 28 U.S.C. § 1331 because this is a civil action arising under the Constitution and the laws of the

United States of America.   This Honorable Court also has supplemental jurisdiction to hear Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367.

4.2     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in this district.

4.3     Venue is also proper in this district under 28 U.S.C. § 1391(b)(3) because Defendants are subject to the Court's personal jurisdiction with respect to these causes of action and there is no other district where the suit may be brought.

## V.    CONDITIONS PRECEDENT

5.1     All conditions precedent have been performed or have occurred pursuant to FED. R. CIV. P. 9(c).

## VI.    FACTS

6.1     On or about December 27, 2023, Plaintiff was a long-haul truck driver and was making a haul at or around 15900 East Freeway, Channelview, Texas 77530 (more commonly known as I-10).   Plaintiff was completely sober and there was no alcohol nor illicit drugs in Plaintiff's system *[emphasis added]*.[1]   In fact, at the time of the incidents made the bases of this lawsuit, Plaintiff was suffering from Sepsis that resulted from Coronavirus.[2]   As such, Plaintiff succumbed to a medical emergency which caused him to lose consciousness and be completely disoriented and incoherent.

---

[1] *See Exhibit A* at 222; 232.

[2] *Id.* at 589.



Cutshall, Trinidad Rey
MRN: 082642641  DOB: 1/25/1981  Sex :M
Adm: 12/27/2023 , D/C 1/2/2024
Medicaid #

**12/27/2023 - ED to Hosp-Admission (Discharged) in 5G MED/SURG (continued)**

**Labs (continued)**

Frequency: STAT Once 12/27/23 1708 - 1  occurrence
Quantity: 1
Instance released by: Johnson, Connor Scott, ResidentMD (auto-released) 12/27/2023  5:08 PM

Class: Unit Collect
Lab status: Final result

**Questionnaire**

| Question | Answer |
|---|---|
| Release to patient | Immediate |

**Specimen Information**

| ID | Type | Source | Collected By |
|---|---|---|---|
| 23BT-361C2335 | Blood | — | Lewis, Lara, RN 12/27/23 1711 |

**Alcohol, Medical Use Only (Normal)**                          Resulted: 12/27/23 1819, Result status: Final result

Ordering provider: Johnson, Connor Scott, ResidentMD  12/27/23
1708
Filed by: Lab, Background User  12/27/23 1819
Resulting lab: BEN TAUB LABORATORY

Order status: Completed

Collected by: Lewis, Lara, RN 12/27/23 1711
CLIA number: 45D0491435

**Components**

| Component | Value | Reference Range | Flag | Lab |
|---|---|---|---|---|
| ALCOHOL, SERUM - RESULT (BKR) | <0.01 | <0.10 g/dL | — | BTLAB |

*Snippet from Exhibit A at 222 proving that there was no alcohol in Plaintiff's system at the time of the incidents made the bases of this lawsuit.*



Cutshall, Trinidad Rey
MRN: 082642641  DOB: 1/25/1981  Sex :M
Adm: 12/27/2023 , D/C 1/2/2024
Medicaid #

**12/27/2023 - ED to Hosp-Admission (Discharged) in 5G MED/SURG (continued)**

Labs (continued)

Positive if urine level > or = 300 ng/mL

| | | | | |
|---|---|---|---|---|
| Amphetamine<br>Comment:<br>Calibratec Standard: D-Methamphetamine<br><br>Positive if urine level > or = 1000 ng/mL | Negative | Negative | — | BTLAB |
| Barbiturate<br>Comment:<br>Calibratec Standard: Secobarbita<br><br>Positive if urine level is > or = 200 ng/Ml | Negative | Negative | — | BTLAB |
| Benzodiazepine<br>Comment:<br>Calibratec Standard: Lormethazepam<br><br>Positive if urine level is > or = 200 ng/mL | Negative | Negative | — | BTLAB |
| Cocaine<br>Comment:<br>Calibratec Standard: Benzoylecgonine<br><br>Positive if urine level > or = 300 ng/mL | Negative | Negative | — | BTLAB |
| PCP<br>Comment:<br>Calibratec Standard: Phencyclidine<br><br>Positive if urine level > or = 25 ng/mL | Negative | Negative | — | BTLAB |
| Cannabinoid<br>Comment:<br>Calibratec Standard: 11 nor-delta(9)-THC carboxylic acid<br><br>Positive if urine level > or = 50 ng/mL | Negative | Negative | — | BTLAB |

*Snippet from Exhibit A at 232 proving that there were no illicit drugs in Plaintiff's system at*

*the time of the incidents made the bases of this lawsuit.*



HARRIS**HEALTH** SYSTEM

Cutshal, Trinidad Rey
MRN: 082042041  DOB: 1/25/1981  Sex :M
Acm: 12/27/2023 , D/C 1/2/2024
Medicaid #

| 12/27/2023 - ED to Hosp-Admission (Discharged) in 5G MED/SURG |
| Coding Queries (continued) |

CDI Queries (continued)

PLEASE RESPOND VIA EPIC IN-BASKET MESSAGE REPLY. After we receive your reply, this message will become part of the permanent legal medical record.

Documentation in the 12/28'23 states, "#Dog bite wounds
- b/f sepsis (leukocytosis, tachy, fever)
- possibly due to dog bite" and
"AKI
- creatnine improved with IVF".

Documentation in the Progress note on 12/28/23 states, "Sepsis
#COVID+

***Snippet from Exhibit A at 589 proving that Plaintiff was suffering from Sepsis resulting from Coronavirus at the time of the incidents made the bases of this lawsuit, thus, proving medical emergency.***

6.2    Consequently, Plaintiff was driving below five miles per hour for at or around an hour in his tractor-trailer down I-10.  Instead of realizing that something was medically wrong with Plaintiff, Defendant Deputies began pursuing Plaintiff and shut down I-10.  This pursuit made national attention and was even live streamed.[3]  Defendant Deputies first disabled the tractor-trailer through a series of spike tracks.  Plaintiff's tractor-trailer was then breached by the Harris County Sheriff's Office "ROOK."  Subsequently, Plaintiff was shot with rubber bullets, subjected to tear gas, ripped to shreds by vicious German Shepherds, and punched repeatedly in the head and face, almost killing Plaintiff.

---

[3]https://abc13.com/trinidad-cutshall-charged-18-wheeler-stopped-on-i-10-east-freeway-big-rig-chase-driver-refuses-to-surrender-houston-highway/14256104/.



*Harris County Sheriff's Office ROOK.*



*Photo of Plaintiff's tractor-trailer following the breach by the ROOK.*

6.3    Plaintiff was then indicted on a felony evading charge by a Harris County Grand Jury.  The criminal matter was preferentially set for a jury trial in the 180th District Court in Harris County, Texas, on June 9, 2025.  On the eve of trial, the Harris County District Attorney's Office dismissed the entire case.



***Evidence of Plaintiff's criminal matter being dismissed in its entirety.***

6.4    The reasons for dismissal were of course because the District Attorney's Office realized that Plaintiff was experiencing a medical emergency and, consequently, did not have the requisite *mens rea* to be guilty of felony evading.  Again, this incident made national news.  As such, it is clear that Defendants had actual notice that a civil lawsuit on this matter was on the horizon and would be imminently filed.





## Charges filed against 18-wheeler driver at center of hourslong SWAT standoff on I-10 East Fwy

Monday, January 1, 2024



*Evidence of national media attention.*[4]

6.5     Following this investigation, the Harris County Sheriff's Office compiled a sixty (60) page incident report attached hereto as *Exhibit B*.  The named Defendant Deputies outlined the horrendous and excessive force that Plaintiff was subjected to in great detail.  It is a miracle that Plaintiff survived this police brutality and constitutional deprivations.

---

[4]https://abc13.com/trinidad-cutshall-charged-18-wheeler-stopped-on-i-10-east-freeway-big-rig-chase-driver-refuses-to-surrender-houston-highway/14256104/.

i.    *Defendant Deputy C. Marshall, Individually (Unit 81K11/Pid 04654)*

6.6    Defendant Deputy C. Marshall used excessive and brutal force in apprehending

the Plaintiff in this matter.  On page eighteen (18) of the incident report, Defendant Deputy C.

Marshall brags in his narrative:

> *I commanded my canine to apprehend the suspect [Plaintiff]. My
> canine partner attempted to jump into the cab but fell.  I assisted
> my canine inside the vehicle.  Once inside the vehicle, I heard the
> suspect [Plaintiff] yell... I entered the cab and observed my canine
> partner making contact with the suspect's [Plaintiff's] right
> forearm just above the wrist...Photographs of the suspect's
> [Plaintiff's] injuries were taken.[5]*

6.7    Instead of realizing that Plaintiff has succumbed to a medical emergency,

Defendant Deputy C. Marshall thought it was a better idea to rip Plaintiff to shreds with a

vicious German Shepherd.  This was excessive force and completely unnecessary.  Plaintiff was

disoriented and confused.  Additionally, Plaintiff was unarmed and sober.  As such, Defendant

Deputy C. Marshall is liable, individually.

ii.    *Defendant Deputy N. Poirier, Individually (S00900)*

6.8    One of the most disturbing narratives in the entire incident report arises from

Defendant Deputy N. Poirier's actions.  Defendant Deputy N. Poirier brags in his narrative:

> *I deployed three (3) less lethal foam-marking rounds into the cab
> of the truck. Two (2) of the rounds struck the suspect [Plaintiff].  I
> deployed these less lethal rounds to gain pain compliance from the
> suspect [Plaintiff]... I observed the HCSO [Harris County Sheriff's
> Office] K9 entering into the vehicle through the passenger side
> opening.  I observed the K9 take hold of the suspect... Due to the
> confined space and suspect's level of resistance, **I delivered several
> closed fist strikes to the suspect's [Plaintiff's] head and face**...
> **[emphasis added]**... I [then] delivered several more **closed fist***

---

[5] *See Exhibit B* at 18.

> *strikes to the suspect's [Plaintiff's] face with my left hand...[6]*
> *While inside the cab of the truck, I struck the suspect [Plaintiff]*
> *4-5 times with a closed fist on his head and face area **[emphasis***
> ***added]**.[7]*

6.9    While Plaintiff was being ripped to shreds by Defendant Deputy C. Marshall's K9 German Shepherd, Defendant Deputy N. Poirier thought it prudent to shoot Plaintiff repeatedly with rubber bullets and, also, **punch him repeatedly in his head with a closed fist until the point of unconsciousness *[emphasis added]***.  This is the classic paradigm of excessive force and police brutality that this Honorable Court should not tolerate.  It is a miracle that Plaintiff was not brutally murdered during this shocking series of unconstitutional events.

### iii.    *Defendant Deputy R.W. Holley, Individually (Unit 43F18/S28141)*

6.10    Defendant Deputy R.W. Holley repeatedly shot rubber bullets at Plaintiff all the while with his 40mm less-lethal launcher.  In fact, he wrote in his narrative:

> *[I] discharged my 40mm to the front passenger front window.   I*
> *discharged my 40mm twice to the front passenger window.[8]*

6.11    Additionally, Defendant Deputy R.W. Holley attempted to smash-in Plaintiff's window.[9]   While Plaintiff was being ripped to shreds by German Shepherds and punched repeatedly in the back of the head until the point of unconsciousness, Defendant Deputy R.W. Holley decided that it was prudent to repeatedly shoot Plaintiff with rubber bullets.  This again is the class paradigm of excessive force and police brutality that deprived Plaintiff of his Constitutional protections on the day of the incidents made the bases of this litigation.

---

[6] *Id.* at 25.

[7] *Id.* at 56.

[8] *Id.* at 8.

[9] *See id.* at 43.

### iv.    Defendant Lieutenant D.R. Calhoun, Individually (Unit 43L20/S00737)

6.12    The "master-mind" behind Deputy R.W. Holley's deplorable conduct was Defendant Lieutenant D.R. Calhoun.    In fact, Defendant Deputy R.W. Holley writes in his narrative:

> [Defendant Lieutenant D.R. Calhoun authorized me to discharge my 40mm to the front passenger front window.[10]

6.13    Defendant Lieutenant D.R. Calhoun was also the individual who thought it prudent to deploy the tractor-trailer with stop sticks and spikes.[11]    Behind every tortious act is an individual with a bright idea, and Defendant Lieutenant D.R. Calhoun played the role perfectly. Spike tracks, German Shepherds, and punching Plaintiff repeatedly in the back of the head with a closed first was not enough for Defendant Lieutenant D.R. Calhoun.    Rather, Defendant Lieutenant D.R. Calhoun ordered the discharge of a series of rubber bullets to be shot at Plaintiff. Again, this is the class paradigm of excessive force and police brutality that violated Plaintiff's Constitutional protections on the day of the incidents made the bases of this litigation.

### v.    Defendant Deputy Kenneth Sandor, Individually (Unit 81X23/S00671)

6.14    Right beside Defendant Deputy R.W. Holley was Defendant Deputy Kenneth Sandor.  Both Defendant Deputies were discharging rubber bullets at Plaintiff while all the chaos was going on.    Apparently, Defendant Deputy R.W. Holley shooting rubber bullets at Plaintiff was not enough and this is why a second Defendant Deputy [Defendant Deputy Kenneth Sandor] began showering Plaintiff with rubber bullets.

_____

[10] *Id.* at 8.

[11] *Id.* at 16; 42.

6.15    In fact, Defendant Deputy Kenneth Sandor wrote in his report:

> *I was tasked with deploying less lethal munitions [rubber bullets] into the cab of the vehicle in an attempt to get the suspect [Plaintiff] to come out.   I deployed two (2) less lethal 40mm Ferrett munition rounds into the passenger side of the vehicle.  The first round was an OC munition and the second was a CS munition. Both Ferrett founds were successfully deployed into the suspect vehicle.[12]*

6.16    Not one, but two Defendant Deputies were showering Plaintiff with projectiles. This the classic paradigm of excessive force and police brutality that deprived Plaintiff of his constitutional protections on the day of the incidents made the bases of this litigation.

### vi.    *Defendant Deputy Nahuel Faiura, Individually (Unit 81X11/S29727)*

6.17    Defendant Deputy Nahuel Faiura used excessive force on Plaintiff by ripping him out of the tractor-trailer and throwing him on the hard concrete in a violent manner.   In fact, Defendant Deputy Nahuel Faiura brags in his narrative:

> *I reached in the cabin and grabbed the suspect [Plaintiff] by his shirt…. Shortly after, the suspect [Plaintiff] **placed his right arm in front of him and it had blood and bodily fluids on it [emphasis added]**… I grabbed him [Plaintiff] by the forearm area with both of my hands and pulled him out of the cabin… while on the ground, I placed my knee on the back of the suspect's [Plaintiff's] right shoulder blade.[13]*

6.18    Instead of realizing that Plaintiff had succumbed to a medical emergency and was ripped to shreds by a German Shepherd, Defendant Deputy Nahuel Faiura violently ripped Plaintiff out of his tractor-trailer and threw him on the hard concrete.  Defendant Deputy Nahuel

---

[12] *Id.* at 9.

[13] *Id.* at 33.

Faiura even acknowledged that Plaintiff was bleeding immensely and nevertheless continued onward with excessive force in complete violation of Plaintiff's Constitutional protections.

6.19    Most notable, at this point, Plaintiff was already unconscious due to the totality of the circumstances, namely, because **he was punched repeatedly in the back of the head with a closed fist** *[emphasis added]*.  This is the classic paradigm of excessive force and police brutality that deprived Plaintiff of his Constitutional protections on the day of the incidents made the bases of this litigation.

### vii.    Defendant Deputy E. Hernandez, Individually (Unit 81X27/S29352)

6.20    Defendant Deputy E. Hernandez not only operated the aforementioned ROOK, but also deployed tear gas all over Plaintiff.  In fact, Defendant Deputy E. Hernandez brags in his narrative:

> I was assigned as the operator of our Armored Critical Incident vehicle which is referred to as the ROOK.  I arrived on scene with the Hydraulic Breaching Ram attached to the front of the ROOK… I was ordered to breach the back right cab window of the 18 wheeler with the Hydraulic breaching ram of the ROOK in order to deploy chemical munitions [tear gas] inside the vehicle to gain compliance.  I successfully moved the ROOK into position and breached the back right passenger cab window using the Hydraulic breaching ram, allowing a SWAT Operator to hand deploy chemical munitions inside the 18 wheeler's cab… I was then ordered to breach and remove the passenger side door of the 18 wheeler in order to gain a better visual of the suspect [Plaintiff] and his surroundings inside the vehicle.  I moved the ROOK into position, breached the passenger side window with the hydraulic breaching ram.  I used the hydraulic breaching ram in a sweeping motion and successfully removed the passenger door of the 18 wheeler, allowing SWAT Operators to gain a better visual of the suspect [Plaintiff] and his immediate surroundings inside the vehicle.[14]

---

[14] *Id.* at 35.

6.21    In conjunction with everything else aforementioned, Defendant Deputy E. Hernandez thought it prudent to utilize even more excessive force to apprehend an individual that was already unconscious and had already succumbed to a medical emergency.   German Shepherds, rubber bullets, and closed-first punches to the back of the head, were not enough for Defendant Deputy E. Hernandez to be satisfied.

6.22    Rather, Defendant Deputy E. Hernandez utilized heavy machinery [i.e., ROOK], and deployed tear gas on Plaintiff, blinding him immediately and causing permanent damage to Plaintiff's vision.   This is the classic paradigm of excessive force and police brutality that violated Plaintiff's Constitutional protections on the day of the incidents made the bases of this litigation.

### viii.    Defendant Sergeant M.A. Carrizales, Individually (Unit 43S12/S15455)

6.23    Defendant Sergeant M.A. Carrizales, was one of the main leaders of this brutal series of events on the day of the incidents made the bases of this litigation.   In fact, he was practically the main supervisor that ordered just about everything.   Defendant Sergeant M.A. Carrizales was instrumental in authorizing a series of spike strips on Plaintiff's tractor-trailer.[15] Defendant Sergeant M.A. Carrizales was the initial pursuer of Plaintiff and instead of recognizing that a medical emergency was transpiring, he thought it was prudent to initiate just about every event made the basis of this litigation.

6.24    Defendant Sergeant M.A. Carrizales authorized the deployment of spike strips, called in the incident to dispatch, and authorized the rest of the aforementioned tactics, namely

---

[15] See id. at 3; 30.

the discharge of rubber bullets in the direction of Plaintiff.[16]  A few salient points are enumerated in Sergeant M.A. Carrizales' narrative:

> The driver [Plaintiff] continued driving eastbound in lane number four at a slow rate of speed, approximately five (5) miles an hour. I stayed behind the tractor-trailer, while using my horn and sirens to get the driver [Plaintiff] to stop.  The driver [Plaintiff] refused to pull over and **in fear that the driver was experiencing a medical emergency [emphasis added]** or under the influence of narcotics or alcoholic beverage(s), I requested a unit to check by.[17]

6.25    As the lead supervisor and Sergeant of the investigation, Defendant Sergeant M.A. Carrizales recognized that there was a strong possibility of a medical emergency.  The inquiry should have stopped there.  Defendant Sergeant M.A. Carrizales should have recognized that medical attention was paramount and instead of deploying hundreds of "Army Rangers" on the scene, should have simply attempted to save Plaintiff's life via medical attention.

6.26    As aforementioned, any hunch that Plaintiff was under the influence of drugs or alcohol was dead-wrong.   Plaintiff had succumbed to a medical emergency and instead of helping Plaintiff, Defendant Sergeant M.A. Carrizales was instrumental in almost killing Plaintiff.  This again is the classic paradigm of excessive force and police brutality that violated Plaintiff's Constitutional protections on the day of the incidents made the bases of this litigation.

### ix.    *Defendant Deputy P. Batton, Individually (Unit 43Z10/S29362)*

6.27    A third Defendant Deputy, Defendant Deputy P. Batton, was **authorized by Defendant Lieutenant D.R. Calhoun and Defendant Sergeant M.A. Carrizales [emphasis added]** to discharge rubber bullets at Plaintiff.   While Defendant Deputy R.W. Holley and

---

[16] *Id.* at 45.

[17] *Id.* at 42.

Defendant Deputy Kenneth Sandor were discharging rubber bullets at Plaintiff, Defendant Deputy P. Batton joined the parade.  Defendant Deputy P. Batton bragged in his narrative:

> *I was then authorized by Lieutenant D.R. Calhoun and Defendant Sergeant M.A. Carrizales to utilize my County-Issued 40mm Less-Lethal Launcher which was loaded with 400mm direct impact marking rounds.  I discharged one round which struck the front passenger windshield of the tractor truck **with no reaction from the driver [Plaintiff] [emphasis added]**.   I was authorized to continue to utilize my 40mm Less-Lethal Launcher to get the driver's attention or get him to exit the vehicle. I discharged two (2) more rounds at the front passenger window **with little to no reaction from the driver [Plaintiff] [emphasis added]**.  I then used one of  [Defendant] Deputy R.W. Holley's 400 Direct Impact Marking rounds to discharge one last round to the passenger window **which still did not get a reaction out of the driver [Plaintiff] [emphasis added]**.[18]*

6.28    Perhaps Plaintiff was paying no attention to three (3) different Defendant Deputies shooting him with rubber bullets because he had succumbed to a medical emergency and was unconscious *[emphasis added]*.   Defendant Sergeant M.A. Carrizales recognized the possibility of a medical emergency and did nothing about it *[emphasis added]*.   This is the classic paradigm of excessive force and police brutality that nearly killed Plaintiff on the day of the incidents made the bases of this litigation.

**x.    *Defendant Sergeant Todd Klosterman, Individually (S00036)***

6.29    Defendant Sergeant Todd Klosterman joined Defendant Deputy N. Poirier in punching Plaintiff repeatedly in the head with closed-first strikes, even after Plaintiff demonstrated overtly that he was already unconscious *[emphasis added]*.   Defendant Sergeant

---

[18] *Id.* at 45.

Todd Klosterman also ordered the deployment of tear gas.[19]    Defendant Sergeant Todd

Klosterman brags in his narrative:

> *I, and another SWAT member [Defendant Deputy N. Poirier], entered the truck through the sleeper cab opening and tried to forcefully remove the subject [Plaintiff] from the truck… I observed [Defendant Deputy N. Poirier] deliver closed fist strikes… **I then delivered three hammer first strikes to the face of the subject [Plaintiff], which appeared effective [emphasis added]**.[20]*

6.30    So, while Plaintiff was already unconscious due to a medical emergency,

Defendant Sergeant Todd Klosterman and Defendant Deputy N. Poirier punched Plaintiff in the

head and face repeatedly with their closed fists *[emphasis added]*.    Again, it is a miracle that

Plaintiff was not murdered on the day of the incidents made the bases of this litigation.    This is

the classic paradigm of excessive force and police brutality that this Honorable Court should not

tolerate.

### xi.    *Defendant Deputy J. Luna, Individually (Unit 81X26/S28871)*

6.31    Defendant Deputy J. Luna joined Defendant Deputy E. Hernandez in shooting

Plaintiff with tear gas, blinding Plaintiff and causing Plaintiff to sustain permanent vision and

nerve damage.    Defendant Deputy J. Luna brags in his narrative:

> *I was advised by [Defendant Sergeant Todd Klosterman] that I would be deploying a flameless Tri-Chamber CS canister into the vehicle [i.e., tear gas]… The Tri-Chamber CS canister was deployed in the rear cabin of the semi-truck to deny him area in the semi-truck and cause him discomfort **[emphasis added]** for his peaceful surrender.   The suspect [Plaintiff] had several different*

---

[19] *Id.* at 57.

[20] *Id.* at 51.

> *ways to exit the semi-truck.  **I was advised over the radio the gas
> had minimal effect on the suspect [Plaintiff] [emphasis added].**[21]*

6.32    Perhaps Plaintiff not reacting to two Defendant Deputies shooting at him with tear gas was because he had succumbed to a medical emergency and was already unconscious *[emphasis added]*.   Instead of recognizing that something was medically wrong, Defendant Deputies continued onward with their parade.  Plaintiff was almost brutally murdered on the day of the incidents made the bases of this litigation by the Harris County Sheriff's Office and this Honorable Court should not tolerate said conduct.   This is the classic paradigm of excessive force and police brutality that deprived Plaintiff of his constitutional protections on the day of the incidents made the bases of this litigation.

### *xii.    Defendant Sergeant Donald Dillow, Individually (S26099)*

6.33    Defendant Sergeant Donald Dillow was another one of the lead supervisors in this parade that failed to recognize that Plaintiff was suffering from a medical emergency.  Defendant Sergeant Donald Dillow also authorized his team of "Army Rangers" to employ the aforementioned tactics.  Defendant Sergeant Donald Dillow was one of the lead supervisors that employed the Harris County Sheriff's Office "BEAR" [i.e., SWAT armored vehicle].

---

[21] *Id.* at 57.



*Harris County Sheriff's Office SWAT BEAR Armored Vehicle.*



*Another image of the Harris County Sheriff's Office SWAT BEAR Armored Vehicle.*

6.34    Defendant Sergeant Donald Dillow brags in his narrative:

*[I] formed an arrest team and staged the BEAR (armored vehicle assigned to SWAT). Once the BEAR arrived, I entered the back of it with several other SWAT members. The BEAR was moved onto the freeway and positioned with the front bumper near the front bumper of the 18-wheeler… I saw the suspect [Plaintiff] sitting in the driver's seat and **he was staring straight in front of him [emphasis added]. He did not acknowledge our presence or focus on us [emphasis added]. The suspect was holding the steering wheel and appeared that he thought he was driving the truck [emphasis added]**… After some time passed, chemical munitions [i.e., Tear Gas] were deployed through the front windshield and the male **[Plaintiff] did not show any signs the chemicals had much effect on him [emphasis added]. The male [Plaintiff] continued to hold the steering wheel and appeared that he believed that he was driving the truck [emphasis added]**… I helped pull the male [Plaintiff] out and he fell to the ground **[emphasis added]**… I placed my knee near the lower portion of his back.[22]*

6.35    Perhaps Plaintiff did not respond to armored vehicles and tear gas because he had already succumbed to a medical emergency and was unconscious *[emphasis added]*. Instead of recognizing that Plaintiff was undergoing a medical emergency and proffering immediate medical attention, Defendant Sergeant Donald Dillow rammed Plaintiff's tractor-trailer with the BEAR, deployed tear gas, and threw Plaintiff down on the hard concrete. This is the class paradigm of excessive force and police brutality that nearly killed Plaintiff on the day of the incidents made the bases of this litigation.

---

[22] *Id.* at 52-53.

*xiii.*     ***Defendant Deputy S. Cogburn, Individually (Unit 81X10/S00697)***

6.36    Defendant Deputy S. Cogburn was the supervisor of Defendant Sergeant Donald Dillow.[23]    In fact, Defendant Deputy S. Cogburn was the Defendant Deputy that ordered the BEAR and ROOK on the scene.  Defendant Deputy S. Cogburn brags in his narrative:

> *I sent Harris County Sheriff's Office SWAT personnel to the location with Harris County Sheriff's Office BEAR and ROOK… I arrived shortly after and began my duties as Team Leader…* ***I observed the driver… and he appeared to be disoriented with all the events and movement around him [emphasis added]****…  Defendant Deputy Kenneth Sandor… deployed one (1) 40mm CS Ferret through the front passenger windshield of the suspect's [Plaintiff's] vehicle.* ***The chemical agent seemed to have no effect and the suspect continued to look down the highway as if he was still driving the 18-wheeler [emphasis added]****… Deputy Kenneth Sandor then deployed a 40mm OC Ferret into the same area…* ***The suspect [Plaintiff] still did not appear to be effected by the chemical agent [emphasis added]****.*[24]

6.37    Perhaps two SWAT armored vehicles, rubber bullets, and tear gas did not faze Plaintiff because he had already succumbed to a medical emergency and was unconscious ***[emphasis added]***.    Instead of recognizing such and immediately ordering medical aid and attention, Defendant Deputy S. Cogburn continued to order and authorize a series of military attacks on Plaintiff.  This is the classic paradigm of excessive force and police brutality that this Honorable Court should not tolerate.  It is a miracle that Plaintiff was not murdered by Defendant Deputies on the day of the incidents made the bases of this litigation.

---

[23] *Id.* at 58.

[24] *Id.*

xiv.    *Defendant Harris County*

6.38    At the time of the incidents made the bases of this litigation the following three elements were met to impose *Monell* liability: 1) Defendant Harris County had policymakers; 2) Defendant Harris County had official policies or customs; and 3) there were violations of Constitutional rights whose moving force were the policies or customs.[25]    The policies were promulgated by the policymakers of the Harris County Sheriff's Office and of Harris County, Texas.

6.39    The official policies included written policy statements, ordinances, and regulations.[26]    The decisions being made arose from the government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.[27]    The policies were official because they resulted from the decisions and acquiescence of the municipal and county officers or bodies with final policymaking authority over the subject matter of the offending policies.[28]

6.40    The aforementioned specific facts pled prove that there were practices and customs so persistent and widespread as to have the force of law.[29]    There were policies in place allowing the Defendant Deputies to use excessive force and to deprive individuals of constitutional protections without due process of law.    There is an established pattern and

---

[25] *Haddock v. Tarrant Cty., Tex.,—-F.App'x—-2021 1991687, at *6 (5th Cir. 2021) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010); *Alvarez v. City of Brownsville*, 904 F.3d 382, 389 (5th Cir. 2018) (en banc).

[26] *Brown v. City of Houston*, 297 F.Supp. 3d 748, 765 (S.D. Tex. 2017).

[27] *Taylor v. Hartley*, 488 F.Supp.3d 517, 541 (S.D. Tex. 2020) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

[28] *Id.* at 765-66 (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

[29] *Ratliff v. Aransas Cty., Tex.*, 948 F.3d 281, 285 (5th Cir.) (quotation marks omitted), *cert. denied*, 141 S. Ct. 376 (2020); *Taylor*, 488 F.Supp.3d at 541 (quoting *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018).

practice that has occurred for a long time and so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of county employees.[30]   There have been similar, specific, and sufficiently numerous prior incidents based on the context of the incidents made the bases of this litigation and the Harris County Sheriff's Office.[31]

6.41    There may be made a plausible inference that Defendant Harris County has policies allowing the Defendant Deputies to use excessive force and deprive individuals of life and liberty without due process.  There are direct causal connections between the policies and the injuries made the bases of this litigation.  These incidents made the bases of this litigation could have and should have been avoided had Defendant Harris County and Defendant Deputies not engaged in such shameful practices.

6.42    Additionally, at the time of the incidents made the bases of this litigation the following elements were met: 1) Defendant Harris County's supervisory and training policies and procedures were inadequate; 2) Defendant Harris County was deliberately indifferent in adopting said supervisory and training policies and procedures; and 3) the inadequate supervisory and training policies and procedures directly caused the constitutional violations and deprivations in question.[32]  The supervisory and training programs were defective because there should have been a sooner realization that Plaintiff was suffering from a medical emergency.

---

[30] *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 396 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (quotation marks omitted).

[31] *Id.* at 396-97.

[32] *Ratliff*, 948 F.3d at 285 (quoting *Zarnow*, 614 F.3d at 170).

Plaintiff first should have received medical treatment, instead of a violent criminal investigation commencing.

6.43    Defendant Harris County and Defendant Deputies consciously disregarded known or obvious consequences of their actions, thus, exhibiting deliberate indifference.[33]   In fact, the aforementioned narratives demonstrate a conscious disregard of a substantial and unjustifiable risk of injury or death.   Just about every aforementioned Defendant Deputy acknowledged that their tactics were not working as Plaintiff barely even noticed them.   Plaintiff was staring off into blank space, was completely disoriented, and was not medically sound.   Instead of recognizing that Plaintiff was harmless and had succumbed to a medical emergency, Defendant Deputies nearly brutally murdered Plaintiff.

6.44    There are a myriad of policies, procedures, ordinances, and regulations that Defendant Harris County is responsible for implementing and that are blatantly deficient.[34]   Particularly, Plaintiff pleads the following policies, procedures, ordinances, and regulations promulgated by Defendant Harris County that are at issue and serve as the bases of this litigation:

    a.    **Harris County Sheriff's Office Policy 101 - Mission Statement & Core Values;**

    b.    **Harris County Sheriff's Office Policy 102 - Code of Ethics;**

    c.    **Harris County Sheriff's Office Policy 201 - Application and Hiring Process;**

---

[33] *Hobart v. City of Stafford*, 784 F.Supp.2d 732, 751 (S.D. Tex. 2011) (quoting *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000).

[34] https://hcsopolicy.com/.

d.      **Harris County Sheriff's Office Policy 301 - Corrective Actions and Disciplinary Procedures;**

e.      **Harris County Sheriff's Office Policy 302 - Professional Conduct Required;**

f.      **Harris County Sheriff's Office Policy 303 - Conduct Prohibited;**

g.      **Harris County Sheriff's Office Policy 304 - Obedience to Orders;**

h.      **Harris County Sheriff's Office Policy 305 - Performance of Duty;**

i.      **Harris County Sheriff's Office Policy 307 - Supervisory Responsibility;**

j.      **Harris County Sheriff's Office Policy 308 - Duty to Safeguard Persons and Property;**

k.      **Harris County Sheriff's Office Policy 401 - Command Situations;**

l.      **Harris County Sheriff's Office Policy 402 - Significant Incident Notifications;**

m.      **Harris County Sheriff's Office Policy 501 - De-escalation & Response to Resistance *[emphasis added]*;**

n.      **Harris County Sheriff's Office Policy 502 - Less-Lethal Impact & Restraining Devices;**

o.      **Harris County Sheriff's Office Policy 503 - Use of Conducted Electrical Devices (CED);**

p.      **Harris County Sheriff's Office Policy 504 - Use of Chemical Weapons;**

q.      **Harris County Sheriff's Office Policy 505 - Use and Discharge of Firearms;**

r.      **Harris County Sheriff's Office Policy 506 - Arrest Procedures;**

s.      **Harris County Sheriff's Office Policy 507 - Search Procedures;**

t.      **Harris County Sheriff's Office Policy 508 - Bias-Based Profiling;**

u.    Harris County Sheriff's Office Policy 509 - Transporting Detainees;

v.    Harris County Sheriff's Office Policy 510 - Special Response Group (SRG);

w.    Harris County Sheriff's Office Policy 511 - Responding to Individuals in Behavioral Crisis *[emphasis added]*;

x.    Harris County Sheriff's Office Policy 702 - Firearms Control, Qualifications, and Training;

y.    Harris County Sheriff's Office Policy 703 - Hiring Procedures for Positions Requiring TCOLE License;

z.    Harris County Sheriff's Office Policy 801 - Operation of County Vehicles;

aa.    Harris County Sheriff's Office Policy 802 - Emergency Equipment;

bb.    Harris County Sheriff's Office Policy 803 - Vehicle Pursuits and;

cc.    Harris County Sheriff's Office Policy 804 - Fleet Vehicle Crash.

6.45    All of the aforementioned policies were deficient and were not adhered to in one way or another during the incidents made the bases of this litigation.  As aforementioned, just about each and every Defendant Deputy recognized that there was a strong possibility of a medical emergency transpiring.   Rather than proffering immediate medical attention, the Defendant Deputies nearly murdered Plaintiff.   This was clearly ratified and allowed by Defendant Harris County through deficiency in its policies, procedures, training, supervision, and regulation.  As a result of Defendants' collective deplorable, abysmal, and shameful conduct, Plaintiff was nearly murdered in cold blood on the day of the incidents made the bases of this litigation.  Plaintiff has sustained a plethora of injuries and damages that are permanent in nature and seeks relief from this Honorable Court both at law and in equity.

## VII.    CAUSES OF ACTION

**A.    COUNT ONE - VIOLATIONS OF 42 U.S.C. § 1983 - EXCESSIVE FORCE AGAINST DEFENDANT DEPUTIES, INDIVIDUALLY**

7.1    Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

7.2    Plaintiff asserts that each and every aforementioned Defendant Deputy herein, used excessive and/or deadly force in the course of the deputies' illegal seizure and arrest of Plaintiff, a free citizen, in violation of the Fourth Amendment and its "reasonableness" standard. Plaintiff asserts that he was unlawfully subjected to excessive force and police brutality by Defendant Deputies in the aforementioned forms and fashions including but not limited to: being attacked by vicious German Shepherds and other K9s, being shot with tear gas and rubber bullets, being punched repeatedly in the face and head, and being thrown to the ground like a wild animal after already demonstrating unconsciousness.

7.3    Said actions resulted directly from the use of force that was clearly excessive to the need, and the use of force was objectively unreasonable.  To establish that the Defendant Deputies, Individually, violated Plaintiff's constitutional right to be free from excessive force, Plaintiff must show: 1) an injury, 2) which resulted from the use of force that was clearly excessive to the need and; 3) the excessiveness of which was objectively unreasonable.[35]

7.4    As aforementioned, Plaintiff suffered a myriad of different permanent injuries and damages as a direct result of Defendant Deputies' actions.  Defendant Deputies' actions and/or omissions were "objectively unreasonable" in light of the facts and circumstances confronting the Defendant Deputies without regard to their underlying intentions or motivations. Clearly, the

---

[35] *See Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2001).

facts and circumstances of these particular incidents made the bases of this litigation demonstrate the unreasonableness of said actions, including that Plaintiff was unarmed, sober, suffering from a medical emergency, not committing a crime with the requisite *mens rea*, and posed no threat nor danger to the Harris County Sheriff's Office.

7.5    Defendant Deputies acted with a conscious disregard of a substantial and unjustifiable risk of harm, thus, exemplifying deliberate indifference.  The Defendant Deputies utterly failed to recognize that Plaintiff was harmless and had already succumbed to a medical emergency.  Rather than medically treating Plaintiff and making sure he was okay, Defendant Deputies nearly murdered Plaintiff.   The Defendant Deputies clearly failed to obtain all necessary information relating to the circumstances prior to encountering and approaching Plaintiff.

7.6    The Defendant Deputies failed to assess the relevant circumstances before using excessive force against Plaintiff.  An objective bystander would have observed that the Plaintiff failed to present any real threat to himself or those surrounding him.  The Defendant Deputies use of excessive force did not relate to a proper or conscious assessment of danger.   The Defendant Deputies choices were objectively unreasonable under the circumstances and unconstitutional. The Defendant Deputies failed to respond to Plaintiff's behavior proportionately.   The use of any force, especially such force as was used, with an individual suffering from a medical emergency was objectively unreasonable and unconstitutional.   In the end, Plaintiff was completely disoriented and not of sound mind due to a medical emergency.   It is a miracle that Plaintiff was not killed.  As such, Defendant Deputies are liable, individually.

**B.    COUNT TWO - VIOLATIONS OF 42 U.S.C. § 1983 - DEFENDANT HARRIS COUNTY'S FAILURE TO TRAIN AND/OR SUPERVISE THE DEFENDANT DEPUTIES**

7.7    Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

7.8    Defendant Harris County is liable to Plaintiff under 42 U.S.C. § 1983 because its failure to train and/or supervise the Defendant Deputies amounts to deliberate indifference to the rights of persons, such as Plaintiff, with whom the Defendant Deputies come into contact and because this failure on Defendant Harris County's part was the moving force behind the Defendant Deputies' deprivation of Plaintiff's constitutional right to be free from unreasonable seizures of his person.[36]

7.9    Additionally, Defendant Harris County is liable under 42 U.S.C. § 1983 because it was deliberately indifferent by failing to provide further training and supervision after learning of a pattern of constitutional violations by its employees.[37]    Defendant Harris County had a constitutional duty to supervise and/or train its Defendant Deputies and protect Plaintiff from wrongful acts, omissions, and unconstitutional use of excessive force.    Defendant Harris County failed to properly supervise its Defendant Deputies.

7.10    This failure to supervise was deliberately indifferent to Plaintiff's constitutional rights because proper training and/or supervision would ensure that Plaintiff would be free from unlawful seizure of his person and would be safe and secure from undue, unreasonable, excessive, and deadly force.    Further, Defendant Harris County's supervisory policies are unconstitutional in the following areas:

---

[36] *See City of Canton v. Harris*, 489 U.S. 378, 389-90, 109 S. Ct. 1197 (1989).

[37] *See id.*

a.    Improper responses to requests for service, such as requests for a crisis intervention team officer;

b.    Inappropriate communications of crisis intervention requests for an individual suffering from a medical emergency;

c.    Not dispatching appropriate personnel to respond to individuals suffering from medical emergencies;

d.    Improper use of non-lethal weapons, such as rubber bullets and tear gas;

e.    Improper use of tasers, K9 units, and hand-to-hand combat tactics;

f.    Improper use of non-lethal self defense measures;

g.    Inadequate management and detention of persons with medical impairments and emergencies transpiring;

h.    Excessive use of force and use of deadly force;

i.    Deficient use of crisis intervention techniques and;

j.    Not providing proper and adequate information for first response officers.

7.11    The actions and omissions of Defendant Deputies' supervisors constituted supervisory encouragement of the use of excessive force.  This grossly inadequate supervision was caused by Defendants' collective deliberate indifference to the rights of individuals with whom the Defendant Deputies would come into contact, such as Plaintiff, to not be subjected to constitutional deprivations.

7.12    Defendant Harris County's constitutionally-flawed supervision of the Defendant Deputies deprived Plaintiff of his constitutional rights and proximately caused Plaintiff's permanent injuries and damages.  Defendant Harris County's law enforcement training policies are unconstitutional in that they fail to provide for:

a.      Proper communication of crisis intervention requests for persons experiencing medical emergencies;

b.      Proper responses to requests for a crisis intervention team officer;

c.      Dispatching appropriate personnel to respond to persons experiencing medical emergencies;

d.      Appropriate and adequate information for first response officers;

e.      Proper use of non-lethal weapons, such as rubber bullets and tear gas;

f.      Proper use of tasers, K9 units, and hand-to-hand combat tactics;

g.      Proper use of non-lethal self-defense measures;

h.      Appropriate management and detention of persons experiencing medical emergencies and;

i.      Limiting excessive use of force.

7.13    Defendant Harris County's improper and inadequate training of its Defendant Deputies with regard to detention, proper use of weapons, proper interrogation and arrest procedures, and the use of excessive force amounts to deliberate indifference toward Plaintiff's constitutional rights and was the moving force behind Defendants' collective deprivation of Plaintiff's constitutional rights.

7.14    Defendant Harris County failed to train and/or supervise its Defendant Deputies to handle an individual experiencing a medical emergency with obvious potential for constitutional violations. Defendant Harris County knew that there would be individuals experiencing medical emergencies and the potential for constitutional deprivations thereof. Yet, Defendant Harris County failed to train its Defendant Deputies to handle such situations adequately which was the direct and proximate cause of the severe and permanent injuries and

damages sustained by Plaintiff. Furthermore, Defendant Harris County's chain of command and supervision failed to meet its supervisory obligations to ensure that these Defendant Deputies were prepared to encounter citizens who are experiencing a medical emergency.

7.15    Further, Defendant Harris County knew of a pattern of ongoing constitutional violations of the rights of the individual in Harris County experiencing a medical emergency. Defendant Harris County demonstrated deliberate and knowing indifference to the acknowledged pattern of violations by failing to provide any additional training or supervision related to encounters with people who are experiencing medical emergencies.

7.16    Further, Defendant Harris County knew and acknowledged the potential for constitutional violations with respect to lack of training in the appropriate use of force. Yet, Defendant Harris County failed to train its Defendant Deputies with respect to the appropriate use of force in citizen encounters, particularly those citizens experiencing medical emergencies. Specifically, Defendant Harris County failed to train and supervise its Defendant Deputies regarding the effect of tear gas, rubber bullets, hand-to-hand combat, and K9 units on individuals experiencing medical emergencies.

7.17    Defendant Harris County is liable under both *City of Canton* bases for failure to train and supervise its Defendant Deputies. First, there was a recurring situation that presented an obvious potential for a constitutional violation and Defendant Harris County's failure to train and supervise its Defendant Deputies resulted in several constitutional violations and deprivations. Secondly, Defendant Harris County was deliberately indifferent by failing to provide further training and supervision after learning of a pattern of constitutional violations.

As a direct result of these constitutional violations, Plaintiff sustained serious and permanent injuries and damages.

7.18    At the time of his injuries, Plaintiff had a clearly established right to be free from excessive force and unreasonable seizure of his person and to be treated as a citizen experiencing a medical emergency - with the utmost care and nurture. Defendants collectively deprived Plaintiff of those rights and, in so doing, caused him serious and permanent injuries and damages.

**C.    COUNT THREE - VIOLATIONS OF 42 U.S.C. § 1983 - DEFENDANT HARRIS COUNTY'S UNLAWFUL POLICIES, PROCEDURES, CUSTOMS, AND REGULATIONS TO IMPOSE *MONELL* LIABILITY**

7.19    Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

7.20    Defendant Harris County is comprised of official policymakers. Causing the improper transfer of critical information to first responders, improper and inaccurate responses to requests for a crisis intervention team ("CIT") officer, and unnecessary weapon use, hand-to-hand combat, and K9 units on individuals experiencing medical emergencies forms an official municipal policy of Defendant Harris County. Further, this conduct rises to Harris County Sheriff's Office custom because the policymakers have tolerated and acquiesced to such behavior. The policies and customs includes the use of excessive force against individuals experiencing medical emergencies under the care of Harris County, Texas. The aforementioned policies, procedures, customs, and regulations violate the Fourth and Fourteenth Amendment protections, as to Plaintiff.

7.21    The policymakers had policymaking authority both explicitly through Defendant Harris County's written ordinances and implicitly as a result of the delegation of authority and the customs and practices of Harris County, Texas, Council.   The policymakers had authority to establish county policy respecting matters relating to the Harris County Sheriff's Office and to adjust those policies for changing circumstances.    Such authority is reflected in the aforementioned policies delegating all policymaking authority to policymakers within Harris County, Texas.

7.22    Emergency services' failure to dispatch information on Plaintiff's medical condition and the need of immediate medical attention also followed Defendant Harris County's policies and customs.    Additionally, the dispatch official's failure to code initial calls and properly dispatch properly trained CIT offers was according to Defendant Harris County's policies and customs.   Each of these policies and customs deprived Plaintiff of his constitutional rights.   This was not a single isolated incident, but an established pattern or practice on the part of Harris County, Texas.

7.23    Harris County Sheriff's Office's (i.e., Defendant Deputies') actions on the day of the incidents made the bases of this litigation followed Defendant Harris County's established policies and practices in terms of failing to obtain appropriate information relating to the circumstances surrounding the need for services, failing to provide thorough information to the officers dispatched, and failing to require the Defendant Deputies to implement CIT procedures on this call.   Defendant Harris County had a long pattern and practice of handling individuals experiencing medical emergencies in the same manner.    The policymakers had actual and/or constructive knowledge of these policies and practices.

7.24    The Defendant Deputies' unreasonable and excessive force followed Defendant Harris County's policies, procedures, practices, and customs.  In fact, Defendant Harris County's practices and customs allowed for and even directed an excessive use of force response to Plaintiff's dire circumstances.  The practice or custom of Defendant Harris County when dealing with individuals experiencing medical emergencies is to use unnecessary and excessive force.  Such a custom and practice is unconstitutional and was the direct and proximate cause of the severe and permanent injuries to Plaintiff.

7.25    Defendant Harris County's deficient customs, policies, procedures, and practices regarding emergency communications, the transfer of information with the Harris County Sheriff's Office, the dispatch of inappropriate personnel, and the improper and unreasonable use of force amounted to a conscious disregard of a substantial and unjustifiable risk, thus, exemplifying deliberate indifference to the rights, safety, and welfare of the citizens of Harris County, Texas, namely, Plaintiff.

7.26    The deficient customs, policies, and practices are a direct and proximate cause of the unlawful use of excessive force against Plaintiff.   These deficient policies, procedures, practices, and customs proximately caused the unconstitutional use of force against Plaintiff.  As a direct and proximate result of these constitutional violations, Plaintiff suffered severe and permanent injuries and damages.

7.27    The United States Supreme Court has identified a municipal "policy" even where the policymaker has failed to act affirmatively at all, so long as the need to take some action to control the agents of the government "is so obvious, and the inadequacy [of existing practice] so

likely to result in the violation of constitutional rights, that the policymaker… can reasonably be said to have been deliberately indifferent to the need."[38]

7.28    In this regard,

The policymaker's toleration of the subordinates' behavior establishes a policy-in-practice just as readily attributable to the municipality as the one-act policy-in-practice described in [City of Canton]. Such a policy choice may be inferred even without a pattern of acts by subordinate officers, so long as the need for action by the policymaker is so obvious that the failure to act rises to deliberate indifference.[39]

7.29    In this case, the need for action is so obvious that the failure to act rises to the level of deliberate indifference. The Harris County Sheriff's Office has customs, practices, and policies regarding the use of excessive and/or deadly force, which includes, but is not limited to:

a.    Allowing, encouraging, requiring, and training Defendant Deputies to use less than lethal weapons in lieu of less harmful techniques, including non-lethal physical restraints or proper detention techniques;

b.    Allowing, encouraging, requiring, and training Defendant Deputies to use non lethal weapons as a first resort, rather than training them to assess the situation and use only necessary force;

c.    Allowing, encouraging, requiring, and training Defendant Deputies to confront individuals experiencing medical emergencies in such a way as to lead to the Defendant Deputies' excessive force;

d.    Failing to establish policies to ensure that CIT requests are communicated properly within the department and to patrol Defendant Deputies with adequate training;

e.    Failing to establish the necessary policies for Defendant Deputies responding to service calls involving individuals experiencing medical emergencies;

---

[38] *City of Canton*, 489 U.S. at 390.

[39] *Id.*

f.    Failing to establish policies necessary to dispatch CIT Defendant Deputies for calls individuals experiencing medical emergencies and;

g.    Failing to establish policies to separate service calls for persons experiencing medical emergencies from regular calls.

7.30    As part of these policies, customs, and practices, Defendant Harris County trains their Defendant Deputies to assess situations according to an "action/reaction" motive. Defendant Harris County trains its Defendant Deputies and expects them to use excessive force before a person has a chance to act.  Consequently, Defendant Harris County's officers, including these Defendant Deputies, rely on excessive force as their primary enforcement tool.

7.31    Defendant Harris County's toleration of its Defendant Deputies' behavior as described herein establishes a policy-in-practice just as readily attributable to the municipality as the one act policy-in-practice described in *City of Canton*.  Such a policy choice may be inferred even without a pattern of acts by subordinate officers, so long as the need for action by the policy maker is so obvious that the failure to act rises to deliberate indifference.

7.32    The governing body of Defendant Harris County's Sheriff's Office, whether this Honorable Court believes it to be the City or County Council or the chain of command within the precinct, failed to provide policies and procedures for individuals experiencing medical emergencies.  Clearly there is no policy nor procedure that emphasizes the importance of medically treating said persons first and foremost, prior to any criminal investigation commencing.

D.    **Count Four - Violations of 42 U.S.C. § 1983 - Failure to Intervene in Excessive Force/Bystander Liability Against Defendant Deputies, Individually**

7.33    Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

7.34    An officer may be liable under 42 U.S.C. § 1983 under a theory of bystander liability where the officer: 1) knows that a fellow officer is violating an individual's constitutional rights; 2) has a reasonable opportunity to prevent the harm and; 3) chooses not to act.[40]    In *Whitley*, this Honorable Court acknowledged the theory of bystander liability for excessive force claims.[41]   Other circuit courts agree that direct use of excessive force is not required to impose liability under 42 U.S.C. § 1983.[42]

7.35    Although *Hale* most often applies in the context of excessive force claims, the 5th Circuit recognized that other constitutional violations also may support a theory of bystander liability.[43]   Further, the Second Circuit has stated that "law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by

---

[40] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

[41] *See id.; see also Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) (holding that an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983); *see also Ware v. Reed*, 709 F.2d 345, 353 (5th Cir. 1983) (concluding that an instruction on the defendant's acquiescence in the unconstitutional conduct of other officers should have been given).

[42] *Garbacik v. Janson*, 111 Fed.Appx. 91, 94 (3rd Cir. 2004); *see also Webb v. Hiykel*, 713 F.2d 405, 408 (8th Cir. 1983) (concluding that an officer has a duty to prevent the use of… force, even if the officers beating [the victim] were [the officers'] superiors); *see also Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982) (concluding that it is not necessary, in order to hold a police officer liable under section 1983, to demonstrate that the officer actively participated in striking a plaintiff); *see also Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972) (stating that "one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge and that this responsibility exists as to nonsupervisory officers who are present at the scene of such summary punishment).

[43] *Whitley v. Hanna*, 726 F.3d 631, 646 n. 11 (5th Cir. 2013) (citing *Richie v. Wharton County Sheriff's Dep't Star Team*, No. 12-20014, 2013 WL 616962, at *2 (5th Cir. 2013) (per curiam) (unpublished) (noting that plaintiff failed to allege facts suggesting that officers were liable under a theory of bystander liability for failing to prevent… other members from committing constitutional violations.)

other law enforcement officers in their presence."[44]   Thus, Defendant Deputies, collectively, may

be liable under 42 U.S.C. § 1983 under a theory of bystander liability when the officer: 1) knows

that a fellow officer is violating an individual's constitutional rights; 2) has a reasonable

opportunity to prevent the harm and; 3) chooses not to act.[45]

**E.    COUNT FIVE  - DEFENDANT HARRIS COUNTY IS LIABLE ON A RATIFICATION THEORY**

7.36    Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous

paragraphs, inclusive, with regard to all causes of action.

7.37    The governing body of Harris County, whether this Honorable Court believes it to

be the City or County Council or the chain of command within the precinct, failed to provide

policies or procedures for the Defendant Deputies to interact with individuals experiencing a

medical emergency adequately.    Additionally, the practice of Defendant Harris County of

interacting with individuals experiencing a medical emergency evidences deliberate indifference,

as aforementioned.

7.38    Defendant Harris County's practice of using excessive force on individuals

experiencing medical emergencies evidences deliberate indifference as well.   Defendant Harris

County ratified the Defendant Deputies' conduct by knowing of and approving their specific

decisions and specific actions in this incident, including but not limited to the discharge of rubber

bullets, deployment of tear gas, usage of K9 units, and brutal hand-to-hand mutual combat in the

form of punching Plaintiff repeatedly in the head and face until the point of near-death *[emphasis*

---

[44] *Anderson v. Branen*, 17 F.3d 552, 557 (2nd Cir. 1994); *see also Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972) ("we believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge").

[45] *Whitley*, 726 F.3d at 646.

*added]*.     As a result, Defendant Harris County is liable and responsible for its Defendant Deputies' constitutional violations.

F.     **COUNT SIX - VIOLATIONS OF 42 U.S.C. § 1983 - SUMMARY PUNISHMENT AGAINST DEFENDANT DEPUTIES, INDIVIDUALLY**

7.39     Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

7.40     Every citizen of the United States of America is guaranteed due process of law prior to loss of life, liberty, or property by the Fourteenth Amendment to the United States Constitution.  Defendant Deputies acted under color of state law when they used excessive force on Plaintiff.  Defendant Deputies' actions demonstrated conscious and deliberate indifference to the rights, safety, and welfare of others, namely, Plaintiff.  Defendant Deputies' conscious and deliberate indifference to Plaintiff's rights under the Fourteenth Amendment was the proximate and producing cause of Plaintiff's injuries and damages.

7.41     No reasonable officer could have believed it was reasonable to harm Plaintiff in this manner.  At the time of the incidents made the bases of this litigation, Plaintiff posed no threat to the Defendant Deputies as he was suffering from a medical emergency and was beaten to the point of unconsciousness *[emphasis added]*.

G.      **COUNT SEVEN- VIOLATIONS OF 42 U.S.C. § 1983 - FAILURE TO PROVIDE MEDICAL AID IN A TIMELY MANNER AGAINST DEFENDANT DEPUTIES, INDIVIDUALLY**

7.42     Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

7.43     Once a person is in police custody, the custodial officer has a duty to provide for his safety and secure medial aid for the person if he is injured in a timely manner.  Defendant

Deputies violated Plaintiff's Fourth and Fourteenth Amendment rights by failing to secure medical attention for Plaintiff in a timely manner. Rather than immediately recognizing the onset of a medical emergency, Defendant Deputies nearly murdered Plaintiff.

## H.    COUNT EIGHT - STATE LAW CLAIMS UNDER THE TEXAS TORT CLAIMS ACT

7.44    Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

7.45    Plaintiff timely presented his claims to Defendants as it is obvious that Defendants had actual or constructive notice of Plaintiff's claims as required by TEX. CIV. PRAC. & REM. CODE § 101.101. As aforementioned, this case made the national news.

7.46    Pursuant to the Texas Tort Claims Act ("TTCA") § 101.001, et. Seq.), and Texas common law, Defendant Harris County is liable for the actions of its employees, including the Defendant Deputies. Defendant Harris County is a governmental unit covered by the Texas Tort Claims Act. The Defendant Deputies, while acting within the scope of their employment with Defendant Harris County, owed duties to Plaintiff and breached those duties, thereby proximately causing Plaintiff damages, and was therefore negligent. While the Defendant Deputies were negligent, they used or misused tangible personal property.

7.47    A governmental unit uses personal property only if it authorizes or orders an employee to use the tangible personal property for a specific purpose.[46] The governmental unit must authorize or order the use of the property in the specific incident at issue.[47] Here, this is

---

[46] *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 206 (Tex. 2020).

[47] *Id.*

exactly what happened, as such, waiver applies and Plaintiff's state common law claims must survive dismissal.

7.48     The Texas Tort Claims Act intentional-tort bar only applies to negligence claims *based on the same conduct as the intentional tort claim*.[48]  Here, Defendant Harris County was negligent in a myriad of different forms or fashions and this is completely independent of any intentional torts that transpired.  Plaintiff's state law negligence claims do not arise out of any intentional torts and have a completely independent basis in law and fact.  Here, the gravamen of Plaintiff's state law claims is the inherent negligence in everything that transpired.  There were separate acts of negligence, independent of any assaultive and/or intentional conduct.  Plaintiff's following state law negligence claims are not based on any intentional underlying conduct and, as such, have a completely independent basis in law and fact to survive dismissal.

## I.     COUNT NINE - NEGLIGENCE OF DEFENDANT HARRIS COUNTY UNDER TEXAS LAW

7.49     Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

7.50     Defendant Harris County owed legal duties to Plaintiff to ensure that the aforementioned conduct would not transpire.  Defendant Harris County breached said duties. Particularly, there were not policies, procedures, customs, or practices, in place to ensure that Plaintiff's medical emergency would have been dealt with first. With no customs in place, it is no surprise that there was no training on said customs, polices, and procedures.  Had the Defendant Deputies been trained on such and supervised accordingly, Plaintiff's injuries and damages never would have transpired.

---

[48] *Saenz v. City of El Paso,* 637 F.App'x 828, 831 (5th Cir. 2016) (citing *Tex. Dep't of Pub. Safety v. Petta,* 44 S.W. 3d 575, 580 (Tex. 2001).

7.51    Defendant Harris County's nonfeasance proximately caused injuries and damages to Plaintiff.  Each of Defendant Harris County's acts and omissions, singularly or in combination with others, constituted negligence that proximately and/or directly caused the occurrences made the bases of this action, and the personal injuries and damages sustained by Plaintiff.

**J.    COUNT TEN - NEGLIGENT HIRING BY DEFENDANT HARRIS COUNTY UNDER TEXAS LAW**

7.52    Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

7.53    Defendant Harris County was negligent in the hiring of Defendant Deputies, in that they knew, or in the exercise of reasonable care should have known, that Defendant Deputies were unfit or unqualified for the position in which they were required to perform.  With greater due diligence, screening, and investigative policies and procedures, Defendant Harris County would have discovered that Defendant Deputies were completely unqualified for the positions in which they were required to perform.

**K.    COUNT ELEVEN - NEGLIGENT TRAINING BY DEFENDANT HARRIS COUNTY UNDER TEXAS LAW**

7.54    Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

7.55    Defendant Harris County was negligent in the training of Defendant Deputies, in that Defendant Harris County knew, or in the exercise of reasonable care should have known, that Defendant Deputies were unfit or unqualified for the position in which they were required to perform.  Defendant Harris County failed to properly train and/or instruct Defendant Deputies for the job that they were to perform. With adequate training, Defendant Deputies would have

known that treating an individual for a medical emergency takes precedent over a criminal investigation.

**L.    COUNT TWELVE - NEGLIGENT SUPERVISION BY DEFENDANT HARRIS COUNTY UNDER TEXAS LAW**

7.56    Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

7.57    Defendant Harris County was negligent in the supervision of Defendant Deputies in that Defendant Harris County knew, or in the exercise of reasonable care should have known, that Defendant Deputies were unfit or unqualified for the position for which they were required to perform. Defendant Harris County failed to adequately and reasonably supervise Defendant Deputies. Had Defendant Harris County supervised Defendant Deputies, then the risk of the aforementioned conduct transpiring would have been alleviated significantly.

**M.    COUNT THIRTEEN - NEGLIGENT RETENTION BY DEFENDANT HARRIS COUNTY UNDER TEXAS LAW**

7.58    Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

7.59    Defendant Harris County was negligent in the retention of Defendant Deputies, in that Defendant Harris County knew or in the exercise of reasonable care should have known that Defendant Deputies were unfit or unqualified for the position in which he was required to perform.    Specifically, after all of the aforementioned events, Defendant Deputies are still currently employed by Defendant Harris County - this is shameful.

**N.    COUNT FOURTEEN - NEGLIGENT IMPLEMENTATION OF POLICIES, PROCEDURES, INVESTIGATIONS, AND MANAGEMENT CONTROLS BY DEFENDANT HARRIS COUNTY UNDER TEXAS LAW**

7.60    Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

7.61    Defendant Harris County was negligent in failing to implement and/or follow investigative policies and procedures that would have prevented the aforementioned misconduct from taking place or would have rectified it after the fact.    Furthermore, Defendant Harris County was negligent in failing to implement and/or follow proper safety management controls that would have prevented the hiring of Defendant Deputies and would have prevented the incidents made the bases of this lawsuit.

**O.    COUNT FIFTEEN - GROSS NEGLIGENCE OF DEFENDANTS COLLECTIVELY UNDER TEXAS LAW**

7.62    Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

7.63    When viewed objectively, Defendants' conduct, acts and/or omissions described above involved an extreme degree of risk, considering the probability and magnitude of potential harm to others.    Defendants had actual, subjective awareness of the risks but proceeded with a conscious indifference to the rights, safety, or welfare of others, namely Plaintiff.

7.64    Defendants' conduct rises to the level of gross negligence.    Accordingly, Plaintiff is entitled to a finding that Defendants were grossly negligent concerning the aforementioned incidents.    Thus, exemplary and/or punitive damages are proper under the law.

## VIII.  DAMAGES

8.1     As a direct and proximate result of Defendants' negligence, gross negligence, nonfeasance, and shameful tortious conduct, Plaintiff suffered severe personal injuries, pain, suffering, mental anguish, disability, impairment, disfigurement, lost wages, lost earning capacity, and has incurred reasonable and necessary medical expenses for the care and relief of his injuries.  For a long time to come, if not for the rest of his life, Plaintiff will continue to suffer physical injuries, physical and mental impairment, disfigurement, pain and suffering, and mental anguish.  Additionally, as a result of the incidents made the bases of this lawsuit, Plaintiff will incur reasonable and necessary medical expenses in the future.

8.2     Plaintiff is entitled to recover exemplary and/or punitive damages for all of said injuries, past and future, in an amount exceeding the jurisdictional limits of this Court.

8.3     Plaintiff would show that any limit on exemplary and/or punitive damages is inapplicable to these Defendants and/or to the factual bases of these claims.   Plaintiff would show that any limits on exemplary and/or punitive damages are unconstitutional under the United States and/or Texas Constitutions.   Plaintiff would show that any limitations on exemplary and/or punitive damages is violative of public policy and the police power of the State of Texas and is an ultra vires act of the Texas legislature.

## IX.  MONETARY RELIEF SOUGHT

9.1     Plaintiff affirmatively pleads that he is seeking damages in excess of $1,000,000.00 at law and relief in equity.

## X.    JURY DEMAND

10.1    Plaintiff demands a trial by jury on all issues set forth herein pursuant to FED. R. CIV. P. 38.

## XI.    ATTORNEY'S FEES

11.1    Request is made for all costs of court and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal, as this Honorable Court deems equitable and just.

## XII.    PRAYER

12.1    Plaintiff prays that Defendants be summoned to appear and answer this Complaint and that on final trial, Plaintiff has judgment against Defendants for:

  a.    All medical expenses in the past and future;

  b.    Mental anguish and pain and suffering in the past and future;

  c.    Physical and mental pain in the past and future;

  d.    Physical and mental impairment in the past and future;

  e.    Lost wages and loss of earning capacity in the past and future;

  f.    Physical and mental disfigurement in the past and future;

  g.    Prejudgment and post judgment interest as allowed by law;

  h.    Costs of suit;

  i.    Attorney fees;

  j.    Exemplary and/or Punitive Damages;

  k.    Special damages in the past and future;

  l.    Liquidated damages in the past and future;

m.    Compensatory damages in the past and future;

n.    Actual damages in the past and future;

o.    Nominal damages in the past and future;

p.    Economic damages in the past and future;

q.    Noneconomic damages in the past and future and;

r.    Such other and further relief to which Plaintiff may show himself justly entitled to receive whether at law or in equity.

Respectfully Submitted,

*/s/ Garrett Lee Gibbins*
Garrett Lee Gibbins
Texas Bar Number : 24125243
South Carolina Bar Number: 105706
New Mexico Bar Number: 163276
Arizona Bar Number: 039804
Colorado Bar Number: 61100
Oklahoma Bar Number: 36371
Illinois Bar Number: 6351087
Tennessee Licensure Pending
United States District Court for the Southern District of Texas Federal ID: 3864602
email: garrettgibbins4747@yahoo.com
phone: 512-587-8572
**ATTORNEY FOR PLAINTIFF**
