## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF TEXAS - HOUSTON DIVISION

| | | |
|---|---|---|
| TRINIDAD CUTSHALL, | ) | |
|     Plaintiff, | ) | |
| v. | ) | **Civil Action No: 4:25-cv-02899** |
| | ) | |
| HARRIS COUNTY, TEXAS, | ) | |
| DEPUTY C. MARSHALL, Individually, | ) | |
| DEPUTY N. POIRIER, | ) | |
| Individually, DEPUTY R.W. HOLLEY, | ) | |
| Individually, LIEUTENANT D.R. | ) | |
| CALHOUN, Individually, DEPUTY | ) | |
| KENNETH SANDOR, Individually, | ) | |
| DEPUTY NAHUEL FAIURA, | ) | |
| Individually, DEPUTY E. HERNANDEZ, | ) | |
| Individually, SERGEANT M.A. | ) | |
| CARRIZALES, Individually, | ) | |
| DEPUTY P. BATTON, Individually, | ) | |
| SERGEANT TODD KLOSTERMAN, | ) | |
| Individually, DEPUTY J. LUNA, | ) | |
| Individually, SERGEANT DONALD | ) | |
| DILLOW, Individually, & DEPUTY S. | ) | |
| COGBURN, Individually, | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |
| _____ | ) | |

### PLAINTIFF'S RESPONSE AND OPPOSITION TO
### DEFENDANT PAUL BATTON'S RULE 12(b)(6) MOTION TO DISMISS

TO THE HONORABLE JUDGE HITTNER,

    **COMES NOW TRINIDAD CUTSHALL**, (hereinafter "Plaintiff"), in the above-styled

and numbered cause of action, and files this, his Response and Opposition to Defendant Paul

Batton's (hereinafter "Defendant Batton"), Rule 12(b)(6) Motion to Dismiss and in support

hereof, would show unto this Honorable Court the following:

## I.    NATURE OF THE CASE

1.1    This is a tragic lawsuit based on the evil, wicked, and vile actions of the most populous county in Texas and its deputies, lieutenants, and sergeants.  American history is full of dark times that have resulted in lessons learned.   However, oftentimes, history unfortunately repeats itself.  This case is the classic paradigm of police brutality and excessive force of the most abysmal, deplorable, and shameful nature.  Individuals in law enforcement enter the field in order to serve and protect, not bully, mutilate, and almost kill innocent citizens.

1.2    As a result of flawed policies, customs, training, and supervision, Plaintiff's constitutional protections were ruthlessly violated in a myriad of different forms or fashions. Plaintiff was almost killed as a result of Defendants' egregious conduct.  Plaintiff was completely sober and was suffering from a medical emergency.   Instead of proffering medical aid and attention, law enforcement shot Plaintiff with rubber bullets, deployed tear gas, unleashed vicious German Shepherds, and punched Plaintiff in the head multiple times, nearly killing Plaintiff.   To date, Plaintiff is continuing to endure medical injuries, mental anguish, disfigurement, and pain and suffering and is afraid to even leave his home.  This lawsuit will be a landmark case that seeks to shed light on the tragic fact that even in this day and age, police brutality is more pervasive than ever.  As such, Plaintiff prays to this Honorable Court for relief at law and in equity.



*This is a photo of Plaintiff after being beaten, shot with rubber bullets, ripped to shreds by German Shepherds, succumbing to tear gas, and being punched repeatedly by law enforcement in the head and face until the point of unconsciousness.*

## II.    INTRODUCTION

2.1    Between August 27, 2025, and August 28, 2025, the Defendant Deputies filed a total of nine (9) motions to dismiss with this Honorable Court.  *See* Docket Entries 26-34.  The crux of their argument is that despite almost brutally murdering Plaintiff, they did nothing wrong, and are nevertheless entitled to qualified immunity. The Defendant Deputies are completely failing to take responsibility for their actions.

2.2    In short, they argue that because they were in the course and scope of their employment with the Harris County Sheriff's Department at the time of the incidents made the bases of this litigation, that that gave them *carte blanche* authority to shoot Plaintiff with rubber

bullets, rip him to shreds with vicious German Shepherds, punch him repeatedly in the back of the head, and subject him to tear gas.  Through an attenuated qualified immunity argument, the Defendant Deputies are arguing that just because they work for the Harris County Sheriff's Department, they are above the law.

2.3     This Honorable Court and His Honor in the seminal *Jones* Opinion made clear that "the law was clearly established in June 2022 that the use of force disproportionate to the need is unconstitutional." *Jones v. Unknown Jail Detention Officer*, No. H-23-1012, 2024 WL 1221173 (S.D. Tex. 2024); *citing Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015); *Joseph on Behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 324 (5th Cir. 2020).  The incidents made the bases of this litigation transpired on December 27, 2023.  As such, His Honor's wisdom still holds true.

2.4     In the case at bar, the Defendant Deputies engaged in deplorable displays of excessive force.  What is even more abysmal is how the Defendant Deputies stood by and did nothing to intervene.   Rather, as one Defendant Deputy would engage in unconstitutional conduct, the next Defendant Deputy would simply acquiesce.  No medical aid was offered in a timely manner.  The Defendant Deputies used their positions of power to nearly get away with murder - literally.   If there has ever been a case in the history of American Jurisprudence to impose punitive damages, it is in the case at bar.

> ### i.     *Defendant Batton's conduct in the case at bar.*

2.5     In the midst of the chaos, while Plaintiff was being ripped to shreds by German Shepherds, subjected to tear gas, punched repeatedly in the back of the head, Defendant Batton thought it was prudent to shower Plaintiff with rubber bullets.  While Defendant Deputy R.W.

Holley and Defendant Deputy Kenneth Sandor were discharging rubber bullets at Plaintiff,

Defendant Batton joined the parade. Defendant Deputy P. Batton bragged in his narrative:

> *I was then authorized by Lieutenant D.R. Calhoun and Defendant Sergeant M.A. Carrizales to utilize my County-Issued 40mm Less-Lethal Launcher which was loaded with 400mm direct impact marking rounds. I discharged one round which struck the front passenger windshield of the tractor truck **with no reaction from the driver [Plaintiff] [emphasis added]**. I was authorized to continue to utilize my 40mm Less-Lethal Launcher to get the driver's attention or get him to exit the vehicle. I discharged two (2) more rounds at the front passenger window **with little to no reaction from the driver [Plaintiff] [emphasis added]**. I then used one of [Defendant] Deputy R.W. Holley's 400 Direct Impact Marking rounds to discharge one last round to the passenger window **which still did not get a reaction out of the driver [Plaintiff] [emphasis added]**.[1]*

2.6 Perhaps Plaintiff was paying no attention to three (3) different Defendant

Deputies shooting him with rubber bullets because he had succumbed to a medical emergency

and was unconscious *[emphasis added]*. Defendant Batton recognized the possibility of a

medical emergency and did nothing about it *[emphasis added]*. Instead, Defendant Batton shot

Plaintiff repeatedly in the head, neck, and body with rubber bullets with his long-rifle. This is

the classic paradigm of excessive force and police brutality that nearly killed Plaintiff on the day

of the incidents made the bases of this litigation. Plaintiff prays to this Honorable Court that

Defendant Batton's Motion to Dismiss be denied in its entirety.

### III. STANDARD OF REVIEW

3.1 This Honorable Court, in its infinite wisdom, so beautifully articulated the legal

standard of a 12(b)(6) Motion to Dismiss in its seminal case of *Thomas v. City of Galveston.*

---

[1] *See* Docket Entry 1-3 (Incident Report) at 45.

*Thomas v. City of Galveston*, 800 F.Supp.2d 826 (S.D. Tex. 2011). There, this Honorable Court reasoned that a court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Id.* at 831. To survive a 12(b)(6), a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Id.*

3.2    A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard is not akin to the probability requirement, but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations. *Id.* This Honorable Court also very sagaciously reasoned that a motion to dismiss under 12(b)(6) is viewed with extreme disfavor and is rarely granted because of the harshness of its impact. *Id.* at 832.

3.3    His Honor, also very sagaciously reasoned in His seminal and precedent-setting *Jones* Opinion, "if the facts alleged are facially sufficient, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." *Jones*, No. H-23-1012, 2024 WL 1221173 at *2; *quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). His Honor further reasoned "an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard." *Id.* at *3. In this case, however, the facts alleged are way more than facially sufficient - they are indeed true.

3.4    This is why the Harris County District Attorney's Office dismissed Plaintiff's criminal case in its entirety. *See* Docket Entires 3, 3-1, and 3-2. To further prove his case to this Honorable Court, Plaintiff has filed nearly six-hundred (600) pages of medical records due to the

trauma inflicted upon him by Defendant Deputies and, also, a sixty (60) page incident report. *See* Docket Entries 1-2 and 1-3, respectively.   As such, Plaintiff prays to this Honorable Court for relief both at law and in equity and further prays that Defendant Batton's 12(b)(6) Motion to Dismiss be denied in its entirety.

## IV.   ARGUMENT & AUTHORITIES

**A.   THE DEFENDANT DEPUTIES ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEY ENGAGED IN EXCESSIVE FORCE, FAILED TO INTERVENE, AND FAILED TO OFFER MEDICAL AID IN A TIMELY MANNER.**

### i.   *Jones v. Unknown Jail Detention Officer*

4.1    His Honor, in the famous and well-revered *Jones* Opinion set forth the proper standard for other courts across the United States to follow.   There, while in a medical holding cell, the plaintiff and several other inmates in the cell saw several detention officers beating another inmate who was outside the cell.  *Jones*, No. H-23-1012, 2024 WL 1221173 at *1. The plaintiff began calling out from his cell, saying that he could see what the detention officers were doing and that it was wrong.  *Id.*   In response, the officers began beating Plaintiff.   After the tragic series of events, the plaintiff was taken to Ben Taub Hospital, just like Plaintiff was here **[emphasis added]**.  *Id.*

4.2    The plaintiff sought not only compensatory damages but, also, punitive damages. *Id.*  The defendants of course moved for a 12(b)(6) dismissal asserting qualified immunity.  *See id.*  This Honorable Court and His Honor did not buy it.  *See id.*   This Honorable Court and His Honor so reasoned:

> Qualified immunity protects officers from suit unless their conduct violates a clearly established right… the test for qualified immunity involves two steps: first we ask whether the officer's

alleged conduct has violated a federal right;… second we ask whether the right in question was clearly established at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct.[2]

The question for the Court is whether the complaint alleges specific facts that would allow the Court to draw a reasonable inference that the defendant applied force in a manner that was objectively unreasonable. *See Kingsley*, 576 U.S. at 398. When considering whether the force used was objectively unreasonable, the Court considers the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.[3]

4.3    This Honorable Court and His Honor so beautifully articulated that even if the plaintiff would not have ultimately prevailed on his claim in the end, he nevertheless has a constitutional right to be free from excessive force so as to survive a motion to dismiss. *Id.* This Honorable Court and His Honor ultimately denied said motions to dismiss and did not allow the defendants to unlawfully shield themselves and hide behind the walls of qualified immunity. *See id.*

4.4    Here, Plaintiff was brutally shot with rubber bullets, ripped to shreds by vicious German Shepherds, subjected to tear gas, and brutally punched repeatedly in the back of the head until the near point of death. Plaintiff was further denied medical care past the point of timeliness and instead was thrown on the concrete like a dead carcass of a wild animal. Plaintiff was not drunk nor high. *See* Docket Entry 1-2 at 222; 232. Plaintiff was not resisting in any manner.

---

[2] *Id.* at *3.

[3] *Id.*

4.5    Plaintiff was completely unconscious, disoriented, and was suffering from a medical emergency.  *See id.* at 589. Plaintiff did not have the *mens rea* of "intentionally" to be criminally convicted of evading, in fact, Plaintiff did not have the *mens rea* to do anything.  This is why the Harris County District Attorneys Office dismissed the criminal case in its entirety.  *See* Docket Entries 3, 3-1, and 3-2.

4.6    In considering the *Jones* factors that His Honor so beautifully articulated, the incidents made the bases of this litigation are objectively unreasonable.  The subjective intent of the officer is irrelevant.  *Pena v. Madrid*, 717 F.Supp.3d 602, 609 (S.D. Tex. 2024).  Instead of realizing that Plaintiff was suffering from a medical emergency, was no threat to society, de-escalating the matter, and proffering immediate medical attention, the Defendant Deputies ganged-up and nearly murdered an innocent citizen.  Plaintiff was going 5 mph for nearly an hour, he was not attempting to flee nor evade - clearly, something was wrong and Defendant Deputies utterly failed to recognize it *[emphasis added]*.

4.7    Here, there was no need for force and the amount of force used was obviously excessive. The extent of Plaintiff's injuries were and are still severe in nature.  Upon information and belief, Plaintiff will have permanent physical injuries including but not limited to nerve damage and vision loss. There were no efforts to limit the amount of force utilized - the Defendant Deputies clearly went overboard.  There was no security risk to society.  Plaintiff was unconscious, was sober, and had no deadly weapons on his person for lethal use.  Plaintiff was no threat.

4.8    There were at least one-hundred (100) SWAT members against Plaintiff, all by his lonesome. Plaintiff was clearly outnumbered.  Finally, Plaintiff was not resisting in any form or

fashion. Plaintiff was disoriented, dazed, and confused.   As such, Plaintiff prays to this Honorable Court that His Honor may uphold the reasoning so flawlessly set forth by Him in the *Jones* Opinion.  Plaintiff prays that Defendant Batton's 12(b)(6) Motion to Dismiss be denied in its entirety.

### ii.    *Khansari v. City of Houston*

4.9    In *Khansari v. City of Houston*, a plaintiff was suffering a medical emergency from ingesting too many medication pills.  *Khansari v. City of Houston*, 14 F.Supp.3d 842, 850 (S.D. Tex. 2014).   The plaintiff was unarmed, disoriented, and needed immediate medical attention.  *See id.*   Instead of proffering immediate medical attention, various officers pointed their guns at plaintiff and repeatedly tased him.  *See id.*   Additionally, the officers kicked the plaintiff as he fell to the ground.  *Id.*   The plaintiff was eventually taken to the hospital, much later, just like Plaintiff was here.  *Id.* at 51.  The plaintiff sued under Section 1983 for excessive force and for a failure to intervene (i.e., bystander liability).  *See id.*   The defendant of course moved for 12(b)(6) dismissal based on qualified immunity.  *See id.*

4.10    This Honorable Court held that in order to prevail on an excessive force claim pursuant to Section 1983, a plaintiff must allege facts capable of showing that they suffered 1) an injury; 2) which resulted directly and only from a use of force that was clearly excessive to the need and; 3) the excessiveness of which was objective unreasonable.  *Id.* at 853.  This Honorable Court then weighed the *Graham* factors to assess whether the particular use of force was objectively reasonable under the circumstances or excessive to the need. *Id.; Kentucky v. Graham*, 473 U.S. 159 (1985).  Said factors are: 1) the severity of the crime at issue; 2) whether the suspect posed an immediate threat to police officers or civilians and; 3) whether the suspect

**Plaintiff's Response and Opposition to
Defendant Paul Batton's Rule 12(b)(6)
Motion to Dismiss**

Page 10 of 20

was actively resisting arrest or intentionally attempting to evade arrest by fleeing the scene.  *See id.*

4.11    This Honorable Court then emphasized what is required to make a viable showing of bystander liability under Section 1983 via a failure to intervene.  *See id.*   To state a claim under Section 1983 for an officer's failure to prevent another officer's use of excessive force, plaintiffs must allege that 1) the bystanding officer knew that a fellow officer was violating an individual's constitutional rights; 2) had a reasonable opportunity to prevent the violation and; 3) chose not to act.  *Id.* at 853-54; *citing Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).   This Honorable Court then reasoned that the qualified immunity analysis involves a two-step inquiry: 1) whether the plaintiff has alleged a violation of a constitutional right and; 2) whether that right was clearly established at the time of the alleged misconduct.  *Id.* at 853.

4.12    This Honorable Court ultimately denied defendant's 12(b)(6) motion to dismiss based on qualified immunity and ruled in favor of the plaintiff. This Honorable Court so reasoned that the officers 1) failed to obtain the necessary information first prior to acting; 2) failed to obtain any additional information prior to drawing their weapons, as is required; 3) failed to de-escalate the situation prior to engaging the disoriented plaintiff; 4) failed to respond with proportionate force and; 5) failed to intervene and prevent said excessive force.  Instead, the spectating officers just acquiesced.  As such, the plaintiff survived dismissal on both his Section 1983 excessive force and bystander liability claims.

4.13    Here, Plaintiff should also survive dismissal on all of his claims. The Defendant Deputies cannot assert qualified immunity in a blanket fashion in order to circumvent a jury trial on the merits in this matter through technicalities and motion practice. What the Defendant

Deputies did here was wrong and they are not above the law. Just like in *Khansari*, the Defendant Deputies here failed to obtain all necessary information in the beginning prior to engaging Plaintiff. Had they done so, they would have recognized Plaintiff was suffering from a medical emergency and posed no threat.  Rather than de-escalating the situation and responding with proportionate force, the Defendant Deputies in the case at bar nearly murdered Plaintiff. Sadly, as one Defendant Deputy was engaging in excessive force, the next just stood idle, and acquiesced in joy. Based on this Honorable Court's wisdom and reasoning in *Khansari*, Defendant Batton's 12(b)(6) Motion to Dismiss should be denied in its entirety.

### *iii.*    *Pena v. Madrid*

4.14    In *Pena v. Madrid*, this Honorable Court once again set forth the applicable standard when assessing Section 1983 claims in the police brutality context. *Pena*, 717 F.Supp.3d at 608-15.  There, just like here, one officer punched the plaintiff while another officer restrained the plaintiff.  *Id.* at 608.  Also, just like here, the plaintiff went to the hospital.  *Id.*  The defendants of course moved for a 12(b)(6) dismissal based on qualified immunity.  *See id.*

4.15    This Honorable Court noted, however, that there is no heightened pleading standard in order to overcome a qualified immunity 12(b)(6) dismissal.  *Id.* at 609.  Rather, plaintiffs must plead with minimal specificity and plaintiff's allegations in their live complaint must be accepted as true.  *See id.*  This Honorable Court emphasized that to rebut a qualified immunity defense, the conduct must be objectively unreasonable - the subjective intent of the officer is irrelevant *[emphasis added]*.  *See id.* This Honorable Court held that the plaintiff sufficiently pled that the defendant deputies used excessive force and, therefore, were not entitled

Plaintiff's Response and Opposition to
Defendant Paul Batton's Rule 12(b)(6)
Motion to Dismiss

Page 12 of 20

to qualified immunity. *Id.* at 611. As such, the defendant deputy's 12(b)(6) motion to dismiss was denied. *See id.*

     4.16   In *Pena*, the plaintiff also pled a Section 1983 Deprivation of Medical Care claim, just as Plaintiff did here. *Id.* at 614. This is because the defendant deputies waited for an extensively long period of time prior to taking plaintiff to the hospital, just like the Defendant Deputies did here in the case at bar. *See id.* This Honorable Court so reasoned that:

> The Fourteenth Amendment right of a pretrial detainee to medical care is violated if an officer acts with deliberate indifference to a substantial risk of serious medical harm and resulting injuries. *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023). A serious medical need is one for which treatment has been recommended or which the need is so apparent that even a laymen would recognize that care is required. *Sims v. Griffin*, 35 F.4th 945, 949 (5th Cir. 2022); *Shaw v. TDCJ-CID*, 540 F.Supp.2d 834 (S.D. Tex. 2008) (treating a broken hand as a serious injury); To show deliberate indifference, the plaintiff must show that officers 1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; 2) that they actually drew the inference and; 3) that they disregarded that risk. *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020). In other words, an officer acts with deliberate indifference to a detainee's serious medical needs if the officer refuses to treat him, ignores his complaints, intentionally treats him incorrectly, or engages in similar conduct that would clearly evince a wanton disregard for any serious medical needs. *Sims*, 35 F.4th at 951. The detainee need not die, or be permanently impaired, before an actionable claim arises for delayed emergency treatment; rather, a plaintiff may recover for pain suffered during a delay in treatment caused by deliberate indifference. *Austin v. City of Pasadena, Tex.*, 74 F.4th 312 (5th Cir. 2023) (citing *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422-23 (5th Cir. 2017).[4]

     4.17   This Honorable Court found that the plaintiff sufficiently alleged a claim for denial of medical care and noted that "Fifth Circuit precedent allows for recovery for pain

---

[4] *Id.* at 614.

suffered during a delay in treatment caused by deliberate indifference." *Id.* at 615; *citing Murrell v. Zeon*, No. CV H-18-2626, 2019 WL 2343398, at \*6 (S.D. Tex. 2019) (citing *Alderson*, 848 F.3d at 415).   This Honorable Court ruled for the plaintiff on both his excessive force and deprivation of medical aid claims under Section 1983.  *See id.*

4.18    Here, after the Defendant Deputies nearly murdered Plaintiff, they left him for dead in the hot Houston sun on the bare concrete.   Plaintiff was non-responsive and it was not until several hours later that Plaintiff presented to Ben Taub.   *See* Docket Entry 1-2.   It is a miracle that Plaintiff is here to tell his story.   There is no doubt that in the case at bar, the Defendant Deputies exhibited a callous disregard for human life and were deliberately indifferent towards the life of Plaintiff.   The Defendant Deputies were more enamored with playing a game of "Army Ranger" than they were for ensuring that Plaintiff was medically cared for.   As such, Plaintiff prays to this Honorable Court that Defendant Batton's 12(b)(6) Motion to Dismiss is denied in its entirety.

  *iv.*  ***Babauta v. Harris County Sheriff's Department***

4.19    In *Babauta v. Harris County Sheriff's Department*, this Honorable Court once again set forth the appropriate standard when assessing the very issues in the case at bar. *Babauta v. Harris County Sheriff's Department*, No. H-08-251, 2008 WL 11464798 (S.D. Tex. 2008).   There, the plaintiff was asleep, disoriented, and non-combative when various deputies arrived on scene, just like Plaintiff was here.   *See id.*   A deputy grabbed the plaintiff's right hand and twisted it up behind plaintiff's back to his left shoulder blade.   *See id.* at \*1.   The deputy then handcuffed the plaintiff extremely tightly.   *Id.*   The deputy violently jerked the plaintiff around

and hit his head.  *Id.*  Most notably, the criminal charges in *Babauta* were dismissed, just as they were here.  *Id.*

4.20    There, the plaintiff sued under Section 1983 for excessive force and the defendants of course moved for a 12(b)(6) dismissal via qualified immunity.  *See id.*  The motion to dismiss of the individual deputy was ultimately denied in its entirety and plaintiff's excessive force claim survived.  *Id.* at * 3.  This Honorable Court reasoned that:

> In the Rule 12(b)(6) context, the Court is not concerned whether a plaintiff will ultimately prevail, but only whether his allegations, if true, state a claim.  *Meitzke v. Williams*, 490 U.S. 319, 328-29 (1989)… Recovery may seem remote and unlikely on the face of the pleadings, but that is not the test for dismissal.[5]

4.21    Here, Plaintiff has alleged incidents that actually transpired in the case at bar.  *See* Docket Entries 1-2 & 1-3.  The deplorable conduct exemplified by the Harris County Sheriff's Department made national news.[6]  Just like the plaintiff in *Babauta*, Plaintiff was non-combative and practically non-responsive when the Defendant Deputies arrived on scene.  Also, just like the plaintiff in *Babauta*, Plaintiff's criminal charges in the case at bar were dismissed in their entirety.  *See* Docket Entries 3, 3-1, & 3-2.  Here, Plaintiff did nothing wrong.  Plaintiff was suffering from a medical emergency.  *See* Docket Entry 1-2 at 589.  This Honorable Court should look to *Babauta*, to arrive at the conclusion that in the case at bar, Plaintiff has properly pled his allegations so as to survive dismissal at this juncture.  Plaintiff prays to this Honorable Court that Defendant Batton's 12(b)(6) dismissal is denied in its entirety.

---

[5] *Id.*

[6]  https://abc13.com/post/trinidad-cutshall-charged-18-wheeler-stopped-on-i-10-east-freeway-big-rig-chase-driver-refuses-to-surrender-houston-highway/14256104/.

v.      *McWashington v. Rodgers*

4.22    Just a few months ago, in *McWashington v.* Rodgers, this Honorable Court once again found viable claims of excessive force and failure to intervene/bystander liability under Section 1983 that survived a 12(b)(6) dismissal based on qualified immunity.  *McWashington v. Rodgers*, No. 4:24-cv-2153, 2025 WL 1124752 (S.D. Tex. 2025).  There, following a traffic stop that consisted of a DWI investigation, the plaintiff was ripped to shreds by a German Shepherd that bit his arm.  *Id.* at *1.  Unlike here, where Plaintiff was completely sober, the plaintiff in *McWashington* was extremely inebriated.  *Id.* at *2; *see also* Docket Entry 1-2 at 222; 232. Like here, there, the plaintiff was charged with evading in a motor vehicle.  *Id.* at *3.  There, various officers stood idle as the K-9 unit ripped plaintiff's arm to shreds, and they did nothing more than acquiesce in silence - just like here.  *See id.*  Additionally, all the while, various officers drew there weapons in plaintiff's direction, even though plaintiff posed no threat, just like here. *See id.*  Also, just like here, the plaintiff was transported to Ben Taub.  *See id.*

4.23    In *McWashington*, the plaintiff's Section 1983 claims for excessive force and failure to intervene/bystander liability both survived 12(b)(6) dismissal based on qualified immunity.  *See id.*  There, the plaintiff was not fighting back nor resisting, just like here.  *See id.* This Honorable Court reasoned that "where an individual's conduct amounts to mere 'passive resistance,' use of force is not justified."  *Id.* at *8; *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017).  This Honorable Court denied dismissal based on qualified immunity and reasoned that "a reasonable officer would have known the degree of force used was unconstitutionally excessive under the circumstances."  *Id.* at *9.  Here, just like in *McWashington*, the Defendant Deputies stood idle and watched Plaintiff being subjected to police brutality of the most evil,

wicked, and vile sense of the meaning.  In revering the wisdom set forth in *McWashington*, this Honorable Court should deny Defendant Batton's 12(b)(6) dismissal in its entirety.

**B.    PUNITIVE DAMAGES ARE PROPER AND WARRANTED IN THE CASE AT BAR.**

4.24    Punitive damages are available in a proper case under Section 1983.  *Smith v. Wade*, 461 U.S. 30 (1983).  A jury may be able to assess punitive damages in a Section 1983 action when the defendant's conduct involves reckless or callous indifference to the plaintiff's federally protected rights, as well as when it is motivated by evil motive or intent.  *Id.* at 30.

4.25    Punitive damages are proper in tort cases not only for actual malicious intent, but also for reckless indifference to the rights of others.  *Id.*    Punitive damages are particularly available when law enforcement engages in excessive force.[7]  Punitive damages may arise in this arena against a municipality when there is malice, evil intent, or gross negligence as to be equivalent to such intent.  *Peace v. City of Center*, 372 F.2d 649 (5th Cir. 1967).

### i.    *Fitzgerald v. Harris County Sheriff's Office*

4.26    This Honorable Court made clear that punitive and/or exemplary damages may be awarded under Section 1983 for claims of excessive force, especially against individuals. *Fitzgerald v. Harris County Sheriff's Office*, No. H-15-1330, 2018 WL 2046969 (S.D. Tex. 2018).  This Honorable Court so beautifully articulated the analysis:

> Whether punitive damages are awarded is in the discretion of the fact-finder and is based on whether the conduct exhibited "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law.  *Smith*, 461 U.S. at 34-36; *citing Adickes v. Kress & Co.*, 398 U.S. 144, 233 (1970).  The standard for

---

[7] *See Shillingford v. Holmes*, 634 F.2d 263 (5th Cir. 1981) (holding punitive damages are proper via police misconduct); *Carey v. Piphus*, 435 U.S. 247 (1978) (indicating that punitive damages may be awarded in a proper case under Section 1983 with the specific purpose of deterring or punishing violation of constitutional rights); *McCulloch v. Glasgow*, 620 F.2d 47, 51 (5th Cir. 1980); *Fielder v. Bosshard*, 590 F.2d 105 (5th Cir. 1979); *Palmer v. Hall*, 517 F.2d 705 (5th Cir. 1975) (police misconduct case).

awarding punitive damages is distinct from that for awarding compensatory damages in Section 1983 cases…Thus, punitive damages may be awarded only if the official conduct is motivated by evil intent or demonstrates reckless of callous indifference to a person's constitutional rights. *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Circuit. 1994).   The reviewing court may not reverse the award of punitive damages absent an abuse of discretion. *Id.*[8]

4.27    Here, this is a case that absolutely warrants punitive and/or exemplary damages. This is a case where the Defendant Deputies almost got away with murder - literally.  Plaintiff was sober and not resisting in any form or fashion.   Plaintiff was suffering from a medical emergency and was not even in his right mind to appreciate what was going on around him. Instead of immediately realizing that Plaintiff needed immediate medical attention, the Defendant Deputies almost killed him.  This Honorable Court should not tolerate such a willful and wanton, conscious disregard, of human life in general.  As such, punitive and/or exemplary damages are absolutely proper in the case at bar.

## V.    CONCLUSION

5.1    For far too long, the Harris County Sheriff's Department has exploited the innocent and violated the Constitutional rights of thousands.  What happened in the case at bar is shocking and is a complete demonstration of just how evil humans can be. Qualified Immunity was not created to allow officials to engage is such shameful behavior.   It does not allow individuals to be above the law.  We all have to answer to the law - nobody is above it.

5.2    This case will be precedent setting. It should be the standard all across the United States - to see if an individual is medically sound, prior to engaging in a seizure.  In the case at bar, the Defendant Deputies obviously did not care if Plaintiff was medically okay.  Plaintiff was

---

[8] *Fitzgerald v. Harris County Sheriff's Office*, No. H-15-1330, 2018 WL 2046969 at *3.

mutilated by bombs, dogs, rubber bullets, tear gas and other weaponry. To think that all the while, one grown man was holding Plaintiff down, while another grown man was punching Plaintiff repeatedly in the back of the skull until the point of near death is lamentable.

5.3      What the Harris County Sheriff's Department did here is a complete breakdown of the law. It exemplifies pure evil. While Plaintiff was a victim of excessive force, various Defendant Deputies stood by and watched the show in acquiescence. No medical aid was offered in a timely manner. It is a miracle that Plaintiff did not die and lives to tell his story. If there was ever a case in the history of American Jurisprudence where punitive damages were proper, it is in the case at bar. A Harris County jury deserves to see the uncensored truth of what can happen, and what did happen here, when individuals think that they are above the law. Plaintiff prays to this Honorable Court, that it holds the Defendants accountable for what they have done. This sort of police brutality is archaic and barbaric, and should never have happened in this day and age. It should have never happened in any point in history. Through this case, Plaintiff prays and hopes to shed a light on police corruption everywhere.

## VI.    PRAYER

6.1      Plaintiff prays that all of his causes of action in his live Complaint survive Defendant Batton's 12(b)(6) Motion to Dismiss. Plaintiff further prays that Defendant Batton's 12(b)(6) Motion to Dismiss be denied in its entirety. Plaintiff further prays that he be granted a jury trial on the merits in this case. Plaintiff further prays for such other and further relief, whether at law or in equity, to which he may show himself justly entitled to receive.

*[Signature Block and Certificate of Service on the following page]*

Respectfully Submitted,


*/s/ Garrett Lee Gibbins*
Garrett Lee Gibbins
Texas Bar Number : 24125243
South Carolina Bar Number: 105706
New Mexico Bar Number: 163276
Arizona Bar Number: 039804
Colorado Bar Number: 61100
Oklahoma Bar Number: 36371
Illinois Bar Number: 6351087
Tennessee Licensure Pending
United States District Court for the Southern District of Texas Federal ID: 3864602
email: garrettgibbins4747@yahoo.com
phone: 512-587-8572
**ATTORNEY FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of September, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing upon all Counsel and Parties of record.


*/s/ Garrett Lee Gibbins*
Garrett Lee Gibbins
Attorney at Law